THE STATE ex rel. CITY OF BOONVILLE v. GEORGE E. HACKMANN, State Auditor.

In Banc, April 6, 1922.

1. **CONSTITUTIONAL LAW: City Indebtedness: Bonds to Build Approach to Private Toll Bridge.** The issuance of bonds by a city of the third class to pay the cost of improving a public street of such city by building therein an approach to a toll bridge across the Missouri River, proposed to be built and owned by a private corporation, one end of which bridge was to be rested on the river bank at the end of said street, within the limits of such city, did not violate the provisions of Section 6 of Article IX of the Constitution forbidding any city to make appropriation or donation or loan its credit to or in aid of any railroad or other corporation or association.

2. ————: **Improvement of Public Street: Statutory Power to Issue Bonds for Entire Cost.** Notwithstanding the provisions of Section 8327, Revised Statutes 1919, a city of the third class, by virtue of the provisions of new Section 8323, enacted at first extra session of Legislature of 1921, Laws 1921, page 113, and Sections 8656 and 8660, Revised Statutes 1919, had the power to issue bonds, within the limits of indebtedness fixed by the Constitution, to pay the entire cost of improving a public street of such city, by

State ex rel. Boonville v. Hackmann.

building therein an approach to a toll bridge across the Missouri River proposed to be built and owned by a private corporation, one end of which bridge was to be rested upon the river bank, at the end of such street, within the limits of such city.

3. ——: ——: **Election to Vote Bonds: Notice.** Where a city of the third class held an election to vote bonds to pay the cost of a public improvement of one of its streets under Section 8656, Revised Statutes 1919, a notice of such election to be held on December 20, 1921, was sufficient under Section 8657, where such notice was publlished in a newspaper published in such city on November 24 and December 1, 8 and 15, 1921, inasmuch as such publication was made for three weeks, the last publication being within two weeks of such election.

## Mandamus.

PEREMPTORY WRIT GRANTED.

*Charles W. Journey* for relator; *John Cosgrove* of counsel.

(1) Any city in this State may contract a debt or debts in excess of the annual income for any purpose authorized in its charter or by the general law of the State. R. S. 1919, sec. 8656; Haeussler v. St. Louis, 205 Mo. 678-679. (2) Cities of the third class are permitted to incur indebtedness for the purpose of improving streets and the construction of bridges with the assent of two-thirds of the voters thereof voting at an election held for that purpose. Mo. Constitution, sec. 12, art. 10; R. S. 1919, sec. 8323. (3) Cities of the third class having the right to improve their streets and construct bridges, it follows that such cities possessed the right to improve a portion of its street over which it had absolute control by constructing an approach to such bridge to facilitate public travel. This is especially true when it is considered that the use designed to be made of the north end of Fifth (Main) Street by this approach is an entirely public use, and no one can make any use of it that every one cannot make, and such approach, when constructed, will be in its character as much a public highway as any other street in said city. A city has the "right to change

the form and proportions of the street and devote it to public travel in a manner different from that from which it had been used. And, the city is the judge as to what is the best shape in which to put a street in order to promote public convenience.'' St. Louis v. Terminal Railroad Assn., 211 Mo. 386. (4) The incurring of the indebtedness and the issuing of the bonds for $50,000 by the city of Boonville is not ''a lending of its credit or a grant of 'public money or thing of value'' to the Old Trails Bridge Company. Elting v. Hackman, 172 Mo. 237; State ex rel. v. Drainage Dist., 252 Mo. 345. (a) The improvement on said Fifth Street was for public purpose and the indebtedness sought to be incurred was for payment of expenses for the necessary improvement of relator's street. State ex rel. v. Burton, 266 Mo. 711. (b) Said improvement, or approach, when erected or built will be owned and controlled by the city and be as much a part of Fifth Street as any other part of it. St. Louis v. Terminal Ry. Assn., 211 Mo. 364. (5) The incurring of the indebtedness of $50,000 by the city of Boonville, as it amounts to less than five per cent of the assessed valuation of the taxable property of the city, is not prohibited by Art. IX, Sec. 6, of the Constitution. (a) The city has subscribed nothing to the capital stock of said bridge company. It has not made any appropriation or any donation or loaned its credit or aid to such bridge company. (b) The Constitution does not prevent a city of the third class from making such improvements in its streets as may incidentally benefit individuals or private corporations. In other words, the Constitution does not require the city to be hostile to or refrain from making needed improvement of its streets that may result in a benefit to a private corporation or a private individual. (c) The city was authorized by Section 8290, Revised Statutes 1919, to do such acts by its mayor and council as in their judgment was of a benefit to ''trade and commerce'' of the city, and by Section 8296 have the right to regulate levies, wharves, landings, depots, depot ground etc., and crossing of railroad tracks,

and do such things as may be necessary to prevent accidents. Because the doing of any of the above things may result to the benefit of some one else does not infringe on constitutional limitations. (d) Towns, cities and villages of this State, whether organized by special charter or under the general laws, may contract debt or debts in excess of the annual income and revenue for any year for any purpose authorized by the charter upon the assent of two-thirds of the legal voters of said city at an election held for that purpose; provided that said indebtedness shall not, with existing indebtedness, aggregate five per cent of the taxable property therein, ascertained by the assessment next before the last annual assessment for state and county purpose previous to the incurring of said indebtedness. Sec. 8656, R. S. 1919; Haeussler v. St. Louis, 205 Mo. 678; State ex rel. v. St. Louis, 205 Mo. 656; State ex rel. v. Gordon, 233 Mo. 390; State ex rel. v. Thomas, 278 Mo. 85; State ex rel. v. St. Louis, 241 Mo. 231. (6) The notice of said election to test the sense of the voters of the city upon the proposition to become indebted and issue bonds for $50,000 to make said improvements was published once a week for three weeks consecutively in two newspapers published in said city, and the election, as required by Sec. 8657, R. S. 1919, was held within two weeks after the last publication of said notice.

*Jesse W. Barrett,* Attorney-General, and *Henry Davis,* Assistant Attorney-General, for respondent.

(1) The bonds voted by relator are void because the proceeds thereof are to be used to make an approach to a private corporation, and because the indebtedness incurred is for the purpose of aiding a private corporation. Sec. 47, Art. 4, Sec. 6, Art. 9, Mo. Constitution. (2) The purported election incurring the indebtedness of fifty thousand dollars is illegal and of no effect, for the reason that a city of the third class may not tax its inhabitants for the entire improvement of a street or

portion thereof. Sec. 8327, R. S. 1919. (3) Said election was also illegal in that a sufficient notice was not published. Sec. 8328, R. S. 1919; State ex rel. v. Tucker, 32 Mo. App. 620; Leonard v. Saline County Court, 32 Mo. App. 633; Bean v. Barton County Court, 33 Mo. App. 635; Ratliff v. Magee, 165 Mo. 461; City of Brunswick v. Benecke, 233 S. W. 169.

DAVID E. BLAIR, J.—Original proceeding in mandamus to compel respondent as State Auditor to register certain bonds of the city of Boonville, a city of the third class, issued for the purpose of improving Fifth Street within the limits of said city from High Street north, by building thereon an approach to a toll bridge proposed to be built by the Old Trails Bridge Company, a private corporation, across the Missouri River, the south end of which bridge will rest on the river bank at the north end of said Fifth Street.

No alternative writ was issued. Respondent filed answer to the petition as and for the writ and relator filed reply thereto. The essential facts not admitted by the pleadings are included in a stipulation which, among other things, provides for the submission of the case upon the pleadings, the stipulation, and printed briefs and arguments of counsel without oral argument. The case is thus before us.

There are at present no bridges over the Missouri River between Kansas City and Jefferson City, except exclusively railroad bridges, and it is in response to the strong demand for a bridge that a corporation has been organized, for the purpose of constructing and operating a toll bridge at Boonville, and its stock has been sold extensively to the residents of neighboring counties. It will be necessary to improve Fifth Street in said city by building an approach to the south end of said proposed bridge. Without going into unnecessary details, it will be sufficient to say that an ordinance was passed by the council of said city, submitting a proposition to the qualified voters of said city to issue bonds in the sum of

$50,000 to defray the cost of improving Fifth Street by building an approach to said proposed bridge, the entire cost of such improvement to be borne by the city. An election on said proposition was held December 20, 1921, and more than two-thirds of the votes cast at said election were found to be in favor of the proposition. No question is raised concerning the regularity of such election, or the prior or subsequent proceedings of the city council, except as to the sufficiency of the notice of the election. The bond issue in question added to the existing indebtedness of said city is within the constitutional limitation. It is therefore unnecessary to detail further facts, except such as become pertinent in the discussion of the issues raised.

I.  Respondent contends that the building of an approach by the city to a bridge owned and controlled by a private corporation is the loaning of its credit by said city in aid of a private corporation and that relator is without power to issue bonds for that purpose because of the provisions of Section 6, Article IX, and Section 47, Article IV, of the Constitution of Missouri. The portions of said Section 6, Article IX, relevant here, are as follows:

**Constitutional Inhibition.**

Sec. 6, Art. IX: "No county, township, city or other municipality shall hereafter become a subscriber to the capital stock of any railroad or other corporation or association, or make appropriation or donation, or loan its credit to or in aid of any such corporation or association."

It is really only the provisions of the above section containing the prohibition of such grants of public money by cities which need be considered. Section 47, Article IV, prohibits the authorization by the Legislature of such acts. No act of the Legislature is here involved. Respondent cites no authority in support of his contention. He admits it is not the purpose of the bond issue to make a direct loan or grant of public money to the toll bridge company. His contention is that it is an indirect

loan or grant, and for that reason in violation of said sections.

In construing a statute or constitutional provision a study of preexisting conditions and a consideration of the mischief to be remedied by the enactment of the statute or constitutional provision lend great aid in its proper understanding. It is common knowledge that counties, townships and cities in this State and elsewhere were at one time induced to vote bond issues in large amounts in aid of much desired railroad construction, some of which was never built, and that such issues frequently involved such counties, townships and cities in a hopeless burden of debt. It was to end such profligacy that the provisions of Section 6, Article IX, and Section 47, Article IV, were placed in the Constitution of 1875. The Constitution of 1865, Section 14, Article XI, prohibited the General Assembly from authorizing any county, city or town to become a stockholder in or to loan its credit to any corporation without the assent of two-thirds of the qualified voters at an election at which such proposition should be submitted. Bitter experience resulted in the absolute prohibition of such financial assistance in the Constitution of 1875.

The purpose of the bond issue under consideration is in no wise similar to the bond issues and loans of public credit at which the above sections were leveled. It is true the private corporation owning and operating the proposed toll bridge will be unable to profit by its investment therein unless approaches to such bridge are built, and to that extent the bond issue is of benefit to such corporation. The great purpose of the construction of the bridge is for the public benefit—to facilitate public travel over the public highways. The right to collect toll charges is a mere incident. In order to have such bridge built, it is necessary *either* that bonds be issued by the proper political subdivisions to pay for its construction and that sufficient taxes be levied thereafter to provide a sinking fund for the retirement of the bonds, to pay interest thereon and to care for its current main-

tenance, *or* that private interests furnish the means therefor and be permitted to make toll or other charges for its use sufficient to pay a reasonable return on the investment, to keep it in proper repair and to make provision against inevitable depreciation. The fact that the private corporation owning the bridge will incidentally be benefited by the improvement, is no more reason for denying the authority of the relator to issue bonds than would the fact that the owner of a lot abutting any street improved by public money profits similarly by such improvement. In either case the benefit to the general public renders insignificant the incidental benefits accruing to the private interests.

While in one sense a bridge and its approaches are one structure, yet physically and for many purposes they are entirely different things. This distinction has been recognized in the case of St. Louis v. Terminal Railroad Association, 211 Mo. 364, 1. c. 386. True the improvement of Fifth Street is solely for the purpose of providing an approach to the proposed bridge, and when constructed will be used almost exclusively for the purpose of going upon or leaving said bridge. Nevertheless said street throughout its entire length and up to its connection with the bridge will necessarily remain a public street, and the bridge company will have no control over it whatever. No funds secured by the bond issue will be loaned to the bridge company or given in aid of the construction of the bridge. We conclude, therefore, that the contention of respondent that the issuance of such bonds is violative of said constitutional provisions must be disallowed.

II. Respondent contends that relator has no power to issue bonds and to tax its citizens for the *full* cost of the improvement of any street or part of such street; that the only authority relator had to vote the issue of bonds under consideration is the authority found in Section 8327, Revised Statutes 1919. Said section, so far as of interest here, is as follows:

**Statutory Authority.**

"Any city of the third class may, by ordinance passed by its common council, and approved by the mayor, provide for the issue and sale of bonds of the city, for the purpose of paying not to exceed *fifty per cent* of the cost of paving, guttering and otherwise improving any alley and the roadway part of any street, . . . which would otherwise be charged wholly against the lots and tracts of land fronting and abutting the street or alley so improved, as provided by section 8323." (Italics ours.)

Section 8323, referred to in the section just quoted, was repealed in 1921, and a new section of the same number enacted in lieu thereof. [Laws 1921, first extra session, page 113.] This act became effective prior to the passage of the ordinance calling the election on the proposal to issue the bonds we are considering. Section 8323, as thus re-enacted, provides that any city of the third class shall have full power and authority "to grade, pave . . . gutter, curb and otherwise improve streets and alleys, and parts of same, and to make . . . bridges." It is further provided in the same section of the act that "any of said street improvements may be paid for in whole or part by such city out of general revenue funds, *or other funds which the city may have for such purposes* if the council so desires, but all such improvements shall be paid for with special tax bills, unless the proceedings of the city for same specify that payment will be made out of the general revenue funds *or other funds in whole or part.*" The parts of the last provision which we have italicized do not appear in Section 8323, Revised Statutes 1919.

Considering solely Section 8323 as amended and Section 8327, and considering them together, the authority of the city to vote bonds for paying the *entire* cost of the improvement is not found. But relator contends it has proceeded under authority of Section 8656, Revised Statutes 1919, which reads as follows:

293 Mo.—21

''The various cities, towns and villages in this State, whether organized by special charter or under the general laws of the State, may contract a debt or debts in excess of the annual income and revenue for any such year, for any purpose authorized in the charter of such city, town or village, or by any general law of the State, upon the assent of two-thirds of the legal voters of such city, town or village voting at an election held for that purpose.''

Section 8660 provides that:

''The provisions of the preceding four sections shall apply to all cities, towns and villages in this State, whether organized by special charter or under the general laws of the State, any provision in any special charter of any city, town or village in the State to the contrary notwithstanding.''

Thus has the General Assembly emphasized the fact that the provisions of Section 8656 are applicable to *all* cities of the State.

Section 8323, being part of the law constituting the charter of cities of the third class, specifically authorizes such cities to improve their streets or any part thereof and to build bridges and to pay the cost of such improvement *in whole or in part*. The debt incurred in the issuance of the bonds being for a purpose authorized by relator's charter, it has full power under Section 8656 to vote said bonds, unless specifically prohibited by Section 8327. It was held in Haeussler v. St. Louis, 205 Mo. 656, l. c. 679, that under Section 6350, Revised Statutes 1899 (now Sec. 8656, R. S. 1919) the city of St. Louis had the power to vote bonds for the purpose of building a bridge across the Missouri River (one end of which was in a foreign state), under the provisions of a general law.

Although Section 8327, Revised Statutes 1919, was enacted since Section 8656, it does not undertake to repeal or limit the application of the provisions of Section 8656. Its provisions are merely cumulative. Under Section 8323, Laws 1921, page 113, relator has the power to

State ex rel. Boonville v. Hackmann.

improve its streets or any part thereof and to pay for same out of the general revenue funds, *or other funds which the city may have for such purposes.* The payment is therefore not limited to the general revenue funds. Relator proposes by its bond issue to create a fund for this very purpose and to pay for the improvement out of such fund. This, we think, it is authorized to do under the provisions of Section 8656, Revised Statutes 1919.

We do not think there is anything in Section 8327, Revised Statutes 1919, which has the effect of taking away the power of relator to proceed under Section 8656. The contention that relator has no statutory authority to issue the bonds to pay the entire cost of the improvement is therefore not well taken.

III. The contention of respondent that the notice of the election was not sufficient is based on the theory that such election notice must conform to the provisions of Section 8328, which define the character of notice required when bonds are authorized under Section 8327. Notice was published in the Central Missouri Republican, a newspaper published in the city of Boonville, on November 24 and December 1, 8 and 15, 1921, and the election was held December 20, 1921. Such publication was therefore made for three weeks, the last publication being within two weeks of the election, and was sufficient under Section 8657 covering publication of the notice required when bonds are voted under the provisions of Section 8656.

Election Notice.

IV. Having thus considered all the objections raised by respondent against the right of relator to have such bonds registered in the office of the State Auditor, and deeming such objections insufficient, it follows that our peremptory writ of mandamus should issue, and such is our order. All concur.