**E. M. LEMASTERS, Plaintiff-Appellant,**

v.

**E. F. WILLMAN, Charles H. Collins, Dale F. Smith, William R. Pelster, Charles F. Schmidt and Russell Dohrmann, Individually and as Directors Comprising the Board of Education of the School District of Riverview Gardens, St. Louis County, Missouri, and the School District of Riverview Gardens, St. Louis County, Missouri, Defendants-Respondents.**

No. 29342.

St. Louis Court of Appeals.

Missouri.

Aug. 16, 1955.

Aubrey B. Hamilton, St. Louis, for appellant.

Norman C. Parker, St. Louis, for respondents.

SAM C. BLAIR, Special Judge.

Plaintiff-appellant is superintendent of schools for the town school district of Riverview Gardens in St. Louis County. He has served continuously since February 1, 1935, by force of various consecutive three-year contracts with its board of education. Section 165.147, V.A.M.S. His current contract became effective July 1, 1953, and was written to expire on June 30, 1956. The board of education for the school district is composed of six directors. § 165.-010(3). Defendants-respondents are those six directors.

On October 27, 1954, the board, its directors voting 4 to 2, ordered plaintiff-appel-

lant dismissed from his position as superintendent. He refused to submit. He contended the board had no authority to dismiss him by any procedure for any cause and that any authority to do so lay elsewhere. He insisted on continuing to discharge his functions. Naming all directors defendants, he sued for a declaratory judgment pronouncing the order wholly void and for a decree enjoining all measures to enforce it. Two of the directors, Smith and Pelster, answered and admitted all averments of his petition. They joined him in his prayer for declaratory and injunctive relief. The four other directors, Kastrup, Willman, Jost, and Collins, answered him by denying that the order was void and by averring that it was altogether legal. They counterclaimed. They prayed for a decree enjoining him from attempting to discharge any of his functions, from "entering upon the premises or in the building of any school in said district during school hours", and from "molesting or interfering with the harmonious conduct of the school program or class recitations."

The trial court did not grant the superintendent a declaratory judgment or an injunction or any relief at all. Instead it dismissed his petition. It found for the directors on their counterclaim and entered a decree enjoining him from "performing or attempting to perform any of his duties" and from "entering upon the premises or in the building of any school in said district during school hours without the express consent of a majority of the

board of education of said district." The superintendent appeals. He seeks reversal of the decree granted defendants and he prays for the declaratory judgment and the injunction the trial court refused. We refer to the parties as they were styled in the trial court.

Questioned by this appeal are (1) the authority of the board of education to dismiss plaintiff by any procedure for any cause or whether that authority resides elsewhere, and (2) whether injunction is available to him to prevent enforcement of the order of dismissal if defendants have no authority to dismiss him.

Originally school boards had authority "to dismiss any teacher at any time for such reasons" as they might "deem sufficient." G.S.1865, p. 260, § 12. In 1870 the school laws were revised and for some reason this authority of school boards to dismiss teachers was dropped. School boards insisted they still had an *implied* authority to dismiss teachers. In 1883, in Arnold v. School Dist., 78 Mo. 226, the supreme court ruled that the general assembly, dropping the former authority to dismiss, meant to deprive school boards of all authority, express or tacit, to dismiss teachers, and had placed it beyond their reach and in other hands. Consult footnote 1 for an explanation of the Arnold case, for the placement of authority to dismiss teachers, and for the procedure for their dismissal which obtained then and governs now.[1]

---

1. All teachers at that time just as now were required to possess certificate to teach. Same to be issued then by county superintendent. Arnold case *held:* express authority of school boards to dismiss repealed; that no implied dismissal authority existed; that teacher dismissable *only* by revocation of his certificate for his "incompetency or immorality proven"; that county superintendent was the then revoking authority, RSMo 1879, § 7083; that revocation annulled teacher's contract with school board, for without certificate he could not teach. Law amended 1879 to enable revocation for "incompetency, cruelty, immorality, drunkenness, or neglect of duty" after

"satisfactory proof" furnished county superintendent. Charges were to be made by accuser in writing. Laws 1901, p. 248, § 9962, added proviso teacher to be given "due notice and opportunity to be heard" by county superintendent. Laws 1909, p. 850, added to existing grounds for revocation: "the annulling of written contracts with boards." It also conferred on state superintendent, state university curators, and state normal school regents, power to revoke certificates, *issued by them*, they to proceed with trial for the above offenses precisely as county superintendent would if certificate issued by him. Laws 1919, p. 701, § 10945, added right

The authority to dismiss teachers has never been restored to school boards. On the contrary, the general assembly, in 1889, satisfied with the Arnold ruling, made it statutory law by providing: "The board shall have no power to dismiss a teacher; but should the teacher's certificate [to teach] be revoked," his "contract is thereby annulled. *· * * Should the teacher fail or refuse to comply with the terms of the contract, or to execute the rules and regulations of the board, the board may refuse to pay said teacher—after due notice, in writing, is given by order of the board— until compliance therewith is rendered." Laws 1889, p. 224, § 7046a, now § 163.100. Since then our courts have repeatedly applied the Arnold case and inflexibly enforced Section 163.100. Armstrong v. School Dist., 1885, 19 Mo.App. 462, 466; Frazier v. School Dist. No. 1, 1887, 24 Mo.App. 250, 254; Rudy v. School Dist. of Poplar Bluff, 1888, 30 Mo.App. 113, 118; Oakes v. Simrell, 1903, 98 Mo.App. 163, 71 S.W. 1060; Wood v. Consolidated School Dist. No. 13, 1928, Mo.App., 7 S.W.2d 1018, 1020; Tate v. School Dist. No. 11, 1930, 324 Mo. 477, 504, 23 S.W.2d 1013, 1026, 70 A.L.R. 771. There has been no departure.

Although plaintiff serves as superintendent for the district, he contends that as such he nevertheless is a "teacher" within the meaning of our school laws and that he is entitled to the protection of §§ 163.100 and 168.090, and cannot be dismissed unless competent authority revokes his certificate or certificates to teach. He holds several such certificates. A determination that he is a teacher within the meaning of these laws would force a decision that the board had no authority to dismiss him. Our courts have not decided this question. The rulings in other jurisdictions defining the status of school superintendents, and of other supervisory personnel, construe statutes so unlike our own that they are of no aid or relevance.[2] Our decision must rest on a construction of our own laws.

 Searching to determine whether plaintiff is a "teacher" and immune from dismissal by the board, examination can be made of the general school laws, laws dealing with special school subjects, school laws enacted at the same time or on widely different dates, school laws once in force and later repealed, and contemporary history of those enactments. State v. Bengsch,

of appeal to circuit court for trial de novo by teacher having certificate revoked. Present statute is § 168.090. With § 163.100 it consummates the studied and unbroken policy of the general assembly for more than 70 years to grant the teacher always greater safeguards against dismissal and to prevent his dismissal in any event except by the authority issuing his certificate to teach. For text of § 168.090, see footnote 3 infra.

2. School City of Peru v. State ex rel. Youngblood, 212 Ind. 255, 7 N.E.2d 176 (supt. a teacher); see also 212 Ind. 255, 7 N.E.2d 1002, 9 N.E.2d 80 (supt. a teacher); School City of Lafayette v. Highley, 213 Ind. 369, 12 N.E.2d 927 (supt. a teacher); Bear v. Donna Independent School Dist., Tex.Civ.App., 74 S.W.2d 179 (supt. a teacher); State ex rel. Board of Education of Williams Dist. v. Martin, 112 W.Va. 174, 163 S.E. 850 (supt. a teacher); Bowden v. Board of Education of School Dist. No. 41, 264 Ill.App. 1 (supt. a teacher); Eelkema

v. Board of Education of City of Duluth, 215 Minn. 590, 11 N.W.2d 76 (supt. not a teacher); Board of Education of City of Minneapolis v. Sand, 227 Minn. 202, 34 N.W.2d 689 (administrative asst. to supt. not a teacher); Downey v. School Committee of Lowell, 305 Mass. 329, 25 N.E.2d 738 (principal a teacher); McDevitt v. School Committee of City of Malden, 298 Mass. 213, 10 N.E.2d 100 (principal a teacher); Boody v. School Committee of Barnstable, 276 Mass. 134, 177 N.E. 78 (principal a teacher); State ex rel. Rathe v. Jefferson Parish School Board, 206 La. 317, 19 So.2d 153 (principal a teacher); State ex rel. McNeal v. Avoyelles Parish School Board, 199 La. 859, 7 So.2d 165 (principal a teacher); State ex rel. Nobles v. Bienville Parish School Board, 198 La. 688, 4 So.2d 649 (principal a teacher); Work v. Central Union High School Dist., 6 Cal.App.2d 626, 44 P.2d 1047 (principal not a teacher); LaMarsh v. School Committee of Chicopee, 272 Mass. 15, 172 N.E. 117 (asst. principal not a teacher).

170 Mo. 81, 107, 70 S.W. 710, 717; State ex rel. Clark v. Gordon, 261 Mo. 631, 646, 170 S.W. 892, 896; Childress v. Southwest Missouri R. Co., 141 Mo.App. 667, 688, 126 S.W. 169, 176; State ex rel. Columbia Nat. Bank of Kansas City v. Davis, 314 Mo. 373, 388, 284 S.W. 464, 470. Judicial notice can be taken of school history that is common knowledge for no requirement forces courts to profess an ignorance of subjects with which all men of ordinary affairs are familiar. Hudgins v. Mooresville Consol. School Dist., 312 Mo. 1, 14, 278 S.W. 769, 772; State ex rel. Missouri Southern R. Co. v. Public Service Commission, 259 Mo. 704, 724, 168 S.W. 1156, 1163; State ex rel. City of Booneville v. Hackmann, 293 Mo. 313, 319, 240 S.W. 135, 136.

Originally no express authority existed for employment of school superintendents. School boards were merely granted a general authority to employ "legally qualified teachers." Laws 1870, p. 141, § 7, now § 163.080. In 1889 school boards in cities of 100,000–300,000 were granted express authority to employ a superintendent. Laws 1889, p. 255, § 7154b, now § 165.387, amended to embrace cities of 75,000–500,000 organized into a single district. In 1897 school boards in cities of 500,000 or more were granted express authority to employ a superintendent and "as many assistant superintendents as it may deem necessary." Laws 1897, p. 224, § 7, now § 165.587.

■ The statutes granting express authority to employ superintendents, when enacted, of course applied only to St. Louis and Kansas City. Other schools were characterized by law as "city, town and village schools." Boards presiding over those schools employed all school personnel under the general authority to employ teachers and no statute granted them any express authority to employ superintendents. But the common knowledge of men of ordinary affairs who have lived long enough in this state is that city and town school districts, or many of them, were employing superintendents as early as 50 years ago. Reliance for verification of this history need not rest heavily on common knowledge. The general assembly itself has verified it. In 1907 it amended the laws relating to such schools by providing: "Any board, * * *, may elect a principal or a superintendent of any city, town or village school for a term of two years, providing such principal or superintendent has previously been twice annually elected to said position and has served in said capacity for at least two successive years." Laws 1907, p. 428. Clearly this was recognition by the general assembly that city, town, and village school authorities then were employing superintendents and supervisory personnel and doing so under the general authority granted by Section 163.080 to employ teachers. It was the only possible authority for doing so. For it authorized those boards to employ superintendents and principals provided those employed had "previously been *twice annually elected to said position*" and had "served in *said capacity* for at least *two successive years.*"

In 1909 all laws relating to city, town, and village schools were repealed. Substituted was an entirely new enactment establishing common, consolidated, town and city school districts. Laws 1909, p. 770, now § 165.010. These districts were granted no express authority to employ superintendents. Common knowledge is that they did employ superintendents. Again the general authority to employ teachers was the only possible one for doing so. Once more our view of school history can rest only lightly on that common knowledge. For in 1921 the general assembly granted county, city and town boards, employing 30 or more teachers, the right to employ a supervisor of physical education to serve "under the direction of the county, city or town superintendent of schools." Laws 1921, p. 642, § 4, now § 163.270. Clearly the general assembly recognized that county, city and town boards then were employing superintendents and doing so under the general authority to employ teachers.

■ In 1931 the general assembly dealt again with the employment of superintendents and their tenure: "In all counties

* * *," of 200,000 and less than 350,000, "any school board or board of education in charge of a public school maintaining a four-year high school course, * * * *and employing a superintendent* * * *, said school board or board of education" may "employ and enter into contract with said superintendent of schools of said school district for a period of not to exceed three years; provided, said superintendent has had not less than five years' experience as a superintendent of public schools *or has been employed in said high school district for a period of two years or more;* provided further, that the school board or board of education * * *" may "enter into contracts for a period not to exceed two years, with *other teachers* previously employed in said high school districts." Laws 1931, p. 331, now § 165.147, and amended to apply to high school districts in all counties of the first class.

By the language of this act the general assembly acknowledged that these boards had been and then were employing superintendents. Indeed it described them as boards already *"employing a superintendent."* Besides, it described as employable superintendents who had been employed "in *said high school district* for a period of two years or more." The act, we think, makes it apparent, furthermore, that the general assembly regarded such superintendents as teachers. Understanding what language conveys, no general assembly, or so it seems to us, would first prescribe the tenure and qualifications of a superintendent and immediately next establish the tenure and qualifications of others, calling those others "other teachers," if it did not mean to place both superintendents and teachers in the teacher category.

 Prior to 1933 the general authority to employ "legally qualified teachers" did not authorize their employment before the annual school election. They were employable only *after* that election. During that year the general assembly repealed and reenacted the statute granting that authority. The single difference between the act repealed and the new act was a proviso added at the end of the statute: "The board of education of any first-class high school may employ a superintendent either before *or* after the annual school election." Laws 1933, p. 387, now § 163.080. We think it is plain that the general assembly regarded superintendents as teachers within the meaning of the general authority to employ teachers. Often helpful in ascertaining the meaning of legislation is the title it carries. Connecticut Mut. Life Ins. Co. v. Albert, 39 Mo. 181; Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 22 L.R.A.,N.S., 1045; 26 Missouri Digest, Statutes, In this instance the title is of much assistance. For the title to the act repealing and re-enacting the authority to employ teachers, and adding permission to employ superintendents "before *or* after" the annual school election, read: "An Act to repeal Section 9209, Article 2, Chapter 57, Revised Statutes of 1929, relating to *employment of .teachers*, and to enact a new section in lieu thereof, to be known as Section 9209, pertaining to the *same subject*", i. e., teachers. It is scarcely credible that the general assembly would write a title to an act affecting both superintendents and teachers, and their employment, and in that title call both teachers, and teachers only, if it believed superintendents were not teachers and should not be regarded and employed as such. We believe the new act and its title, considered with the repealed act, clearly show the general assembly regarded superintendents as teachers. For it plainly declared, in actual and in legal effect, that superintendents were teachers by stating that the new act, in speaking of teachers *and* of superintendents, was speaking of the *"same subject"* as the prior act which used only the word "teachers."

 Argument can be made, of course, that the Act of 1907 relating to superintendents in city, town, and village schools, the Act of 1931 relating to superintendents in high school districts, and the Act of 1933 relating to employment of superintendents before *or* after the annual school election, all were enacted by the general assembly because it believed, absent such statutes, no

authority existed to employ any superintendent. Of course this argument is rather attenuated because the Acts of 1931 and 1933 called superintendents teachers and ample authority for the employment of teachers existed already. But assuming its validity, it is, of course, then arguable that the general assembly considered all prior employments of superintendents as teachers were illegal, that it did not regard them as teachers, and that it believed they occupied an altogether separate and insulated category. We think these arguments do not withstand analysis. That these acts expressly mentioned superintendents of certain school districts, and that the laws relating to those districts had not done so before, is far from conclusive as an interpretation by the general assembly that prior to these enactments school districts had no authority to employ superintendents under the law then existing. Gartenbach v. Board of Education of City of St. Louis, 356 Mo. 890, 896, 204 S.W.2d 273, 276.

As observed, in 1909 the Act of 1907 and all other laws relating to city, county, and town schools were repealed. In their stead an entirely new act established common, consolidated, town and city school districts. Unaffected were the laws expressly authorizing employment of superintendents in cities of 75,000–500,000 organized into a single district and in cities of 500,000 or more. But the new districts were granted no express authority to employ a superintendent. For us to embrace these arguments would be to hold that the general assembly intended that only cities of 75,000–500,000 organized into a single district and cities of 500,000 or more should employ a superintendent, and that no other city, town, consolidated or common district in the entire state should employ a superintendent whatever its size and requirements.

■ This intention ought not to be attributed to the general assembly. For beyond its inherent illogic is the fact that in 1921 that body recognized that city and town districts had been and then were employing superintendents. As already observed, it actually delegated to those super-

intendents the direction of the newly authorized supervisors of physical education. Laws 1921, p. 642, § 4, now section 163.270. It must be presumed it had knowledge of the existing state of the school laws and knew that no express authority to employ superintendents existed except in the laws relating to cities of 75,000–500,000 organized into a single district and to cities of 500,000 or more. Sikes v. St. Louis & S. F. R. Co., 127 Mo.App. 326, 333, 105 S.W. 700, 702; State ex rel. Case v. Wilson, 151 Mo.App. 723, 729, 132 S.W. 625, 627; Graves v. Little Tarkio Drainage Dist. No. 1, 345 Mo. 557, 573, 134 S.W.2d 70, 81. Possessed of such knowledge it knew that any superintendent then being employed in a city or town school district had to be employed under the general authority to employ teachers. There was no other possible authority. Moreover, we ought not to shut our eyes to school history of this century, early to late, that is the common knowledge of all men of ordinary affairs who have lived long enough in this state. For they know that many city and town districts have employed superintendents during most, if not all, of this century. We take judicial notice of this common knowledge. Hudgins v. Mooresville Consol. School Dist., supra, 278 S.W. 772; State ex rel. Missouri Southern R. Co. v. Public Service Commission, supra, 168 S.W. 1163; State ex rel. City of Boonville v. Hackmann, supra, 240 S.W. 136; State ex inf. McKittrick v. Whittle, 333 Mo. 705, 708, 63 S.W.2d 100, 101, 88 A.L.R. 1099; Childress v. Southwest Missouri R. Co., supra, 126 S.W. 176. Noticing it ourselves, surely we ought not to attribute to the general assembly, charged with acquainting itself with the way the laws are being administered, an ignorance not imputable to men of ordinary affairs. As common knowledge it must have known that city and town superintendents were being employed, and confirmation of this exists in the instances it expressly acknowledged they were. Laws 1907, 1921, and 1931. Yet year after year, for decades, it left the state of the law to remain static and these employments to continue. We cannot conclude that it did not realize the significance of its inaction. On the con-

trary, we conclude that it did and that it was satisfied with the laws as they stood and with the way they were being construed and administered. Robertson v. Manufacturing Lumbermen's Underwriters, 346 Mo. 1103, 1108, 1109, 145 S.W.2d 134, 136; 26 Missouri Digest, Statutes, ■

■ Our view of the Acts of 1907 and 1931 is that they were intended merely to establish the tenure and qualifications of superintendents in school districts where the general assembly expressly recognized they were then being employed as teachers. The Act of 1933 merely amended, we think, the statute granting general authority to employ teachers, under which the general assembly knew superintendents then were being employed, by providing that certain school boards could employ a superintendent as a teacher before or after the annual school election. We do not regard the laws of 1907, 1931, and 1933 as enactments intended to originate any authority to employ. Certainly none of them professed to establish the office or post of superintendent. The Acts of 1907 and 1931 expressly recognized the office or post as then existing. We think the general assembly intended these acts to be regulatory merely and to leave superintendents to be employed as teachers in the future under the authority utilized to employ them in the past, i. e., the general authority to employ "legally qualified teachers." City of Hannibal v. Guyott, 18 Mo. 515, 519–522.

One statutory duty resting on the state superintendent of schools from 1874 until 1945 was to collate and print the school laws, annexing his own constructions, and to distribute them to each county in the state for the use of all school officers. In this connection he was required to "confer with and advise county officers on all matters pertaining to the school law and school directors, and all other school officers, teachers and patrons of the public schools." Laws 1874, p. 157, § 47; RSMo 1939, § 10601. This duty is now exercised by the state board of education. Laws 1945, p. 1639, § 8, A. 1949 S.B. 1036. As an aid to construction, the trial court took

the testimony of Dr. Charles A. Lee, a former rural school teacher, high school teacher, high school principal, city superintendent of schools, state superintendent of schools from 1923 to 1935, and, presently and for the last twenty years, professor of education at Washington University, and that of George B. John, earlier a teacher in the public schools and a county superintendent of schools, and now director of finance and school laws in the state department of education, a post he has filled since 1930. The parties stipulated that two other educators, if called, would testify "cumulatively and corroborate" the testimony of Dr. Lee and Mr. John. There was no countervailing testimony. That given was to this effect: To the knowledge of both witnesses, state superintendents always have regarded school district superintendents as teachers and always have construed the general authority to employ "legally qualified teachers" as authorizing employment of superintendents and payment of their salaries where express authority to do so did not exist. They knew school district superintendents were being so employed and paid. Their failure to interfere was not due to oversight. It was the result of a considerate construction of the laws and of an approval of the practice.

■ The combination of laws we are construing is ambiguous. In instances of ambiguity, consideration may be accorded to the contemporaneous and practical construction placed on laws over long periods by those charged with their construction and administration. "Now, while it is true", said the court in State v. Job, 205 Mo. 1, 29, 103 S.W. 493, 500, "that the interpretation as given by the state superintendent [of schools] to this section would not be conclusive upon the courts who are called upon to interpret it in accordance with the well-settled rules of construction, yet we do say that the practical construction given this law by the officers, whose special duties imposed upon them the proper administration of the school laws of the state, is entitled to great weight when the law which they have had occasion to construe is called in question before the

courts." State ex rel. National Life Ins. Co. of Montpelier, Vt. v. Hyde, 292 Mo. 342, 241 S.W. 396; State ex rel. Union Electric Light & Power Co. v. Baker, 316 Mo. 853, 293 S.W. 399; State ex inf. Gentry v. Long-Bell Lumber Co., 321 Mo. 461, 12 S.W.2d 64; 26 Missouri Digest, Statutes, ▆▆▆ Contemporaneous or practical construction of statutes of course can never abrogate a clear text or negate its obvious sense. On the other hand, a contemporaneous and practical construction sometimes is quite an effective aid in discovering the true intent of ambiguous laws courts must construe. We think the construction placed by the successive state superintendents of schools on the school laws we are considering is entitled to serious respect in deciding our question. Entitled also to respect is the absence from the reported decisions of the appellate courts of any contest by any attorney general of the practice of employing and paying superintendents as "legally qualified teachers." § 163.080. From 1889 until 1945 the attorney general was a member of the state board of education and could not have failed to be familiar with this practice. RSMo 1889, § 8039; Laws 1945, p. 1639, § 1; § 160.020, V.A.M.S.

▆▆▆ Our discussion has embraced all laws we deem material to the question whether plaintiff is a teacher in the sense intended by Section 163.080, the general authority to employ "legally qualified teachers", Section 163.100, the statute forbidding school boards to dismiss any teacher, and Section 168.090, the statute establishing machinery for revoking the certificate of a teacher. Mathematical certainties of construction are not present in this case. But we believe the preponderance of persuasion weighs down the scales in plaintiff's favor and requires us to hold that he is a teacher within the meaning of these laws and dismissable only by revoking his certificate or certificates to teach. § 168.090.[3] The construction placed for decades on these laws by the state superintendents of schools and by the officials at school district level, the general assembly's acquiescence in this construction, the construction it evidenced in the Acts of 1907, 1921, 1931, and 1933, and its continued failure to enact legislation precluding this construction, all cause us to believe that this construction is the one it intended. Arguments that school boards have implied authority to dismiss a superintendent, despite Section 163.100 denying the right to dismiss any teacher, cannot be accepted. Over the years the general assembly has demonstrated that the omission to grant express authority to dismiss superintendents as such was not an inadvertence. Authority has been granted in an array of instances to

3. "168.090. Revocation of certificate and appeal therefrom.—The office, institution or official having authority to issue certificates under sections 168.030 to 168.110 shall in like manner have authority to revoke said certificates upon satisfactory proof of incompetency, immorality, neglect of duty, or the annulling of written contracts with the local board of directors or board of education without the consent of the majority of the members of the board which is a party to such contract. All charges must be preferred in writing, signed and sworn to by the party or parties making the accusation, which must be filed with the respective certificating authority, and the teacher must be given due notice of not less than ten days, and an opportunity to be heard, together with witnesses. The complaint must plainly and fully specify what incompetency, immorality, neglect of duty or other charge or charges are made against the teacher, and if after a hearing, the certificate is revoked, the teacher shall have the right to appeal said hearing to the circuit court at any time within ten days thereafter by filing an affidavit and giving bond as is now required before magistrates. On any such appeal the judge of the circuit court shall, with or without a jury, at the option either of the teacher or the person making the complaint, hear the whole matter anew and decide the same de novo, affirming or denying the action of the certificating authority, and he shall tax the cost against the appellant if the judgment of the certificating authority is affirmed, but if he disaffirms such judgment, then he shall assess the costs of the whole proceedings against the person or persons making the complaint."

dismiss school personnel,[4] but the only express authority for dismissal of a superintendent, except one of irrelevance noticed in footnote 4, resides in the laws governing cities of 500,000 or more. Laws 1897, p. 227, § 18, now § 165.583. Each time authority was granted to dismiss school personnel a presumption rose that the general assembly was aware of the existing state of the laws and satisfied with it as it stood and as it left it to continue. To this must be added the decision of this court in State ex rel. Brokaw v. Board of Education, Mo. App., 171 S.W.2d 75, 82, ruling that authority to dismiss a superintendent is "in no sense necessary in order to carry into effect the authority to appoint." Defendants have no implied authority to dismiss plaintiff.

Arguments that the machinery Section 168.090 establishes is too cumbersome and time-consuming for boards desiring dismissal of a superintendent must be rejected. For we think it is apparent that the general assembly intended that machinery to be employed whatever its obstacles or shortcomings. Claims that public policy requires that school boards must have implied authority to dismiss so school programs can be saved from obstruction or defeat must be addressed to the general assembly and not to us. To substitute for the concept of the general assembly our view of what might be the more salutary public policy would be for us to legislate rather than to adjudge. Our function is to declare the law as we discover it in the text furnished us by the general assembly and when we have done so our authority ends. We must leave the law as it has been so long construed to stand as it reads until the general assembly sees fit to alter it. Stribling v. Jolley, Mo.App., 253 S.W.2d 519, 522 [1, 2]. We hold that defendants have no authority to dismiss plaintiff by any procedure for any cause.

Notwithstanding, defendants contend an injunction should not be granted for they say plaintiff has an adequate remedy at law. They cite decisions which rule that a teacher wrongfully dismissed may sue for damages. Hall v. School Dist. No. 10, 24 Mo.App. 213; Rudy v. School Dist. of Poplar Bluff, supra, 30 Mo.App. 113; De Hart v. School Dist. No. 39, 214 Mo. App. 651, 263 S.W. 242; Taggart v. School Dist. No. 52, 339 Mo. 223, 96 S.W.2d 335; Dye v. School Dist. No. 32, 355 Mo. 231, 195 S.W.2d 874. Undoubtedly that avenue is open to a teacher wrongfully dismissed. But is he shackled to it and denied all other relief, even though his dismissal is by a board that has no legal authority to dismiss him by any procedure for any cause? The cited decisions do not require such a ruling.

Defendants cite School District No. 1 v. Carson, 9 Colo.App. 6, 46 P. 846, and Schwier v. Zitike, 136 Ind. 210, 36 N.E. 30. Injunction to prevent dismissal of a teacher was denied in both cases. Of the Colorado case enough is said when we say that

---

4. School boards may "suspend or expel" pupils, Laws 1874, p. 150, § 10, now § 163.010; school boards may remove attendance officers "at pleasure," Laws 1905, p. 146, now § 164.040, Laws 1933, p. 385, § 1, now § 164.050; school boards, cities 35,000–50,000, may remove "for just cause" school district business manager, Laws 1943, p. 891, § 10585(a), now § 165.153; school boards may "remove the district clerk", Laws 1874, p. 150, § 13, now § 165.240; superintendent of instruction, cities 500,000 or more, may remove assistant superintendents, with "approval of the board", Laws 1897, p. 220, § 7, now § 165.587; regents, state colleges, may "remove the president or any professor or teacher" for "incompetency, neglect or refusal to perform his duties, dishonesty, drunkenness or immoral conduct," Laws 1874, p. 145, § 12, now §§ 174.140, 174.150; curators, state university, may "remove, at discretion, the president, dean, professors, instructors and other employees", Laws 1889, p. 263, now § 172.300; curators, Lincoln University, may exercise removal authority identical with that of curators of state university, Laws 1921, p. 87, § 6, now § 175.040; willful neglect of any superintendent to execute requirements of §§ 163.200–163.240, sufficient cause for "dismissal or removal from his position", Laws 1947, Vol. I, p. 492, § 10374b, now § 163.230.

the school board there had statutory authority to dismiss any teacher "summarily" and it was entirely within that authority in doing so. It is not relevant. The defendants have no authority. Of the Indiana case it suffices to say that Indiana courts have long since ceased to follow it and now approve injunction. Watson v. Burnett, 216 Ind. 216, 222, 23 N.E.2d 420, 423; Haas v. Holder, 218 Ind. 263, 268, 32 N.E.2d 590, 592. Courts in the majority, moreover, declare injunction does lie to prevent dismissal of school superintendents, principals, and teachers by a board acting without legal authority. Grigsby v. King, 202 Cal. 299, 307, 260 P. 789, 793; Campbell v. Warwick, 142 Miss. 510, 516, 107 So. 657, 658; Stokes v. Newell, 172 Miss. 289, 295, 159 So. 540, 541; Bourgeois v. Orleans Parish School Board, 219 La. 512, 521, 53 So.2d 251, 254; Jackson v. Powell, 119 La. 882, 44 So. 689; Temple Independent School Dist. v. Proctor, Tex.Civ.App., 97 S.W.2d 1047, 1052; Clay v. Independent School Dist. of Cedar Falls, 187 Iowa 89, 100, 174 N.W. 47, 51.

■■■ We notice that there has been no *actual* dismissal of the plaintiff. He is only *threatened* with dismissal. The board ordered him dismissed and the trial court enjoined him from performing his functions, but all parties agreed he should continue as superintendent and receive his salary pending final determination of his rights on appeal. There has been no cessation of his service. The supreme court approved injunction to prevent a board of education and its superintendent of instruction from employing and dismissing teachers without legal authority in State ex rel. Brown v. Board of Education of City of St. Louis, 299 Mo. 465, 253 S.W. 973. This court ruled in State ex rel. Brokaw v. Board of Education of City of St. Louis, supra, 171 S.W.2d 83, that a board of education in the City of St. Louis was without legal authority to dismiss its superintendent and declared: "This being true the only proper proceeding in case the board of education wrongfully assumed the right to remove the superintendent would be by injunction."

The supreme court relied on this decision in King v. Priest, 357 Mo. 68, 79, 206 S.W. 2d 547, 551, in declaring: "An administrative officer or agency proceeding or threatening to proceed without jurisdiction and in excess of powers granted may be restrained."

Beyond these observations, real argument could be made that the wrong threatening plaintiff is amenable so little to marketplace responses that he ought not to be turned out of equity with the comfortless instruction that the blow about to fall on him is one he must receive before he can have any redress at all and then have only that which an award of money can administer. Dismissed from his post of honor and responsibility, a professional teacher is stigmatized, sometimes beyond rehabilitation, before his colleagues, before those who might otherwise want his professional services, and before the public generally. We need not develop this thesis. Our ruling can rest alone on the decisions of the supreme court and of this one and the reasons they advance. Injunction, we think, is an available and appropriate remedy to prevent plaintiff's unauthorized dismissal, and we so rule.

For these reasons, the decree of injunction entered against plaintiff and the judgment and decree denying him all declaratory and injunctive relief must be reversed. This cause must be remanded to the trial court with directions to enter a judgment declaring that plaintiff is a teacher within the meaning of Sections 163.080, 163.100, and 168.090, V.A.M.S., and entitled to all protections they afford, that defendants have no authority, express or implied, to dismiss plaintiff by any procedure for any cause, that their attempted dismissal of plaintiff is wholly void, and that he can be dismissed only by application of the provisions of Section 168.090, V.A.M.S., and not otherwise, and directing the entry of a decree enjoining defendants from attempting to dismiss plaintiff or dismissing him by any procedure for any cause, and from interfering with him in the discharge of his legal and proper functions, but in no sense

restricting defendants in the free exercise of any rights which presently or hereafter they may have by force of Sections 163.100 and 168.090, V.A.M.S.

It is so ordered.

ANDERSON, P. J., and MATTHES, J., concur.