James Edward Welsh,
Presiding Judge
James Pittman appeals from the eirpuit court’s judgment dismissing his petition for damages alleging that his employer, Cook Paper Recycling Corporation, “caused the workplace to be an objectively hostile and abusive environment based on sexual preference.” The circuit court dismissed Pittman’s petition for failure to state a claim.[1] Pittman contends that the *481 circuit court erred in dismissing his claim because his petition - adequately stated a claim for sex discrimination in that he alleged that he was harassed and terminated from his employment because of his sexual orientation.[2] Because the Missouri Human Rights Act does not prohibit discrimination on the basis of sexual orientation, we affirm the circuit court’s judgment dismissing Pittman’s petition for failure to state a claim.
The facts, as alleged in Pittman’s petition, are as follows. Pittman, a homosexual male, worked as a controller at Cook Paper from April 2004 until his termination on December 7, 2011. During the time Pittman was employed by Cook Paper, the president of .the company, Joe T. Jurden, told Pittman that “he was a ‘cocksucker’ and made other comments of a sexual nature, discriminatory to a male homosexual, including asking him if he had AIDS.” Cook Paper “discriminated against [Pittman] because [Cook Paper] did not approve of the male companion that [Pittman] had been seeing.” When Pittman and his companion terminated their relationship, Cook Paper “treated [Pittman] more harshly than a male who was getting a divorce from his female wife.” Cook Paper “caused the workplace to be an objectively hostile and abusive environment based on sexual preference.” On December 7, 2011, Cook Paper terminated Pittman’s employment. •
On February 8, 2014, Cook Paper filed a motion to dismiss Pittman’s petition alleging that the petition failed to state a claim for which relief could be granted. Specifically, Cook Paper argued that Missouri law lacks any legal standard or statute prohibiting employment discrimination on the basis of “sexual preference” and that “sexual preference” is not a protected class under the Missouri Human Rights Act. The circuit court agreed and dismissed Pittman’s claim. The circuit court found that Pittman did not allege discrimination on the basis of “sex” but alleged that he was discriminated against because he was a homosexual. Thus, the circuit court concluded that the Missouri Human Rights Act does not include sexual orientation as a class of individuals protected from discrimination. Moreover, although Pittman urged the court to recognize the claim of “sexual stereotyping,” the circuit court declined Pittman’s request and stated that' it was not the role of the court to create new causes of action. The court found that “[b]ased on the current state of Missouri law,” it had to dismiss Pittman’s claim. Pittman appeals.
This Court reviews the grant of a motion to dismiss de novo. Travelers Prop. Cas. Co. of Am. v. Manitowoc Co., Inc., 389 S.W.3d 174, 176 (Mo. banc 2013). “[Review of a motion to dismiss for failure to state a cause of action ‘is solely a test of the adequacy, of the plaintiffs petition.’” Id. (quoting City of Lake St. Louis v. City of O’Fallon, 324 S.W.3d 756, 759 (Mo. banc 2010)). We review the petition “‘in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be. adopted in that case.’ ” Travelers Prop., 389 S.W.3d at 176 (quoting City of Lake St. Louis, 324 S.W.3d at 759). We examine the petition, accepting as true all facts alleged and construing them liberally in favor of the plaintiff to *482 determine whether he has stated a claim upon which relief can be granted. Lynch v. Lynch, 260. S.W.3d 834, 836 (Mo. banc 2008).
In his sole point on appeal, Pittman asserts that the circuit court erred in dismissing his claim because his petition adequately stated a claim for sex discrimination. In particular, Pittman contends that his allegation that he was harassed and terminated from his employment because of his sexual orientation was sufficient to state a- claim for discrimination under the Missouri Human Rights Act.
The issue of whether or not discriminating against an employee because of his sexual orientation is prohibited under the Missouri Human Rights Act is a question of first impression ’ in Missouri. Section 213.065.ia)(a), RSMo 2000, provides:
1. It shall be an unlawful employment practice:
(1) For an employer, because of the race, color, religion, national origin, sex, ancestry, age or disability of any individual:
(a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s race, color, religion, national origin, sex, ancestry, age or disability[.]
“The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue.” Crawford v. Div. of Emp’t Sec., 376 S.W.3d 658, 664 (Mo. banc 2012). “Where the language of the statute is unambiguous, courts must give effect to the language used by the legislature.” Keeney v. Hereford Concrete Prods., Inc., 911 S.W.2d 622, 624 (Mo. banc 1995). “Courts lack authority To read into a statute a legislative intent contrary to the intent made evident by the plain language.’ ” Id. (citation omitted). No room exists for construction “‘even when the court may prefer a policy different from that enunciated by the legislature.’” Id. (citation omitted). .
The plain language of the Missouri Human Rights Act is clear and unambiguous. Employers cannot discriminate against employees on the basis of their “sex.” The clear meaning prohibiting discrimination based upon “sex” under the Missouri Human Rights Act intended by the Missouri legislature concerns discrimination based upon a person’s gender and has nothing to do with sexual orientation. Indeed, the first definition of “sex” provided by Webster’s Third New International Dictionary is “one of the two divisions of human beings respectively designated male or female[J” Webster’s Third'New International Dictionary 2081 (Unabridged 1993). Legislative intent is the pole star of statutory' interpretation and construction. Once legislative intent has been determined and becomes the pole star of statutory construction, there can be no unintended consequences of legislation by judicial interpretation. Thus, sex discrimination occurs when a plaintiffs sex is a contributing factor in an employer’s employment decision. Ruppel v. City of Valley Park, 318 S.W.3d 179, 185 (Mo.App. 2010). Pittman does not allege that he was discriminated against or harassed because of his gender but alleges- that he was discriminated against because of his sexual orientation.
In essence, Pittman’s petition is seeking 'a declaration that sexual orientation discrimination qualifies for protection under the Missouri Human Rights Act because it is tantamount to discrimination based on sex. We note, however, that, to even reach this reading of Pittman’s petition, we must liberally construe the petition be *483 cause, as the circuit court wisely noted, the petition truly does not allege discrimination or harassment on the basis of “sex.” Pittman merely alleges that “[Cook Paper] caused the workplace to be an objectively hostile and abusive environment based on sexual preference”[3]
The Missouri Human Rights Act, however, is not a general bad acts statute but lists categories of discrimination that are unlawful: “race, color, religion, national origin, sex, ancestry, age or disability.” Unlike many other states,[4] Missouri has not enacted legislation prohibiting discrimination against homosexuals by adding sexual orientation as a protected status in the Missouri Human Rights Act.[5] If the Missouri legislature had desired to include sexual orientation in the Missouri Human Rights Act’s protections, it could have done so. No matter how compelling Pittman’s argument may be and no matter how sympathetic this court or the trial court may be to Pittman’s situation, we are bound by the state of the law as it currently exists. Without the legislative addition of “sexual orientation” to the statutory list of protected statuses, the Missouri Human Rights Act does not prohibit discrimination based upon a person’s sexual orientation.
“[C]ourts cannot rewrite the statutes the legislature in its wisdom has enacted no matter how much such rewriting is desired by a particular group.” Gross v. Merchants-Produce Bank, 390 S.W.2d 591, 600 (Mo.App. 1965). “We cannot usurp the function of the General Assembly, or by construction, rewrite its acts.” Marshall v. Marshall Farms, Inc., 332 S.W.3d 121, 128 (Mo.App. 2010). Our role is limited to interpreting and applying the statute as it currently exists. “To substitute for the concept of the general assembly our view of what might be the more salutary public policy would be for us to legislate rather than to adjudge” Le-masters v. Willman, 281 S.W.2d 580, 590 (Mo.App. 1955). “Our function is to declare the law as we discover it in the text furnished us by the general assembly and when we have done so our authority ends.” Id. “We must leave the law as it has been so long construed to stand as it reads until the general assembly sees fit to alter it.” Id. Therefore, until the general assembly amends the Missouri Human Rights Act to include sexual orientation, discrimination based upon one’s sexual orientation is not protected by the statute. The circuit court, therefore, astutely dismissed Pittman’s petition for failure to state a claim because the Missouri Human Rights Act does not prohibit discrimination on the basis of sexual orientation
Pittman and the ACLU make several policy arguments advocating broad social change in Missouri regarding the rights of homosexuals. In support of their policy arguments, they assert that in interpreting *484 the Missouri Human .Right we should be guided by federal cases involving Title VII. In particular, they rely on the- United States Supreme- Court’s decision in Price Waterhouse v. Hopkins, 490 U.S. 228, 109 5.Ct. 1775, 104 L.Ed.2d 268 (1989). In that case, «the Court held that, if gender stereotyping, i.e. discriminating against a person because he or she failed to conform to the employer’s expectation as to how someone of his or her gender should behave, plays a-motivating part in an employment decision, an employer “may avoid liability only by proving by a preponderance of the evidence that it would have made the- same decision even if it had not taken the plaintiffs gender into account.” Id. at 251 and 258, 109 S.Ct. 1775. The Court stated:
[W]e are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group, for in forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of , disparate treatment of men arid women resulting from sex stereotypes.
Id. at 251, 109 S.Ct. 1775 (internal quotation marks and citations omitted). Price Waterhouse, therefore; clarified that sex discrimination under Title VII comprises not only disparate treatment of women as compared to men, or vice versa, but also discrimination based upon gender stereotyping.[6]
We need not decide, however, whether or not the Missouri Human Rights Act prohibits sex discrimination based upon gender stereotyping because Pittman did not raise a gender stereotyping claim in his petition.[7] In his petition, Pittman merely alleged that the president of Cook Paper told him that “he was a ‘cocksucker’ and made other comments of a sexual nature, discriminatory to a male homosexual, including asking him if he, had AIDS.” Pittman further alleged that Cook Paper “discriminated against [him], because [Cook Paper] did not approve of the male companion that [he] had been seeing” and that Cook Paper “treated [him] more harshly, than a male who was getting a divorce from his female wife.” Finally, Pittman alleged that “[Cook Paper] caused the workplace to be an objectively- hostile and abusive environment based on sexual preference.” The petition is devoid of any allegation regarding gender stereotyping. Pittman did not claim that he was harassed because he failed to comply with societal stereotypes of how he ought to appear or behave. His claim was a simple and direct claim that he was discriminated against because of his sexual orientation.
*485 Moreover, “[t]he [Missouri Human Rights Act] and Title VII are coextensive, but not identical, acts.”[8] Brady v. Curators of Univ. of Mo., 213 S.W.3d 101, 112 (Mo.App. 2006) (emphasis omitted). As the Brady court explained:
These statutes create different causes of action. Missouri Courts have adopted federal Title VII. case law when interpreting analogous discrimination statutes in the Missouri Human Rights Act. However, the MHRA is not merely a reiteration of Title VII. The- Act is in some ways broader than Title VII, and in other ways is more restrictive. If the wording in the MHRA is clear and unambiguous, then federal case law which is contrary to the plain meaning of the MHRA is not binding.
Id. at 113 (citations omitted). Contrary to Pittman’s and the ACLU’s contentions, the language of the Missouri Human Rights Act is clear and unambiguous: it prohibits employment discrimination based on an individual’s race, color, religions, national origin, sex, ancestry, age or disability. It does not prohibit discrimination on the basis of sexual orientation.
Conclusion
Because the’ Missouri Human Rights Act does not prohibit discrimination on the basis of sexual orientation, we affirm the circuit court’s judgment dismissing Pittman’s petition for failure to state a claim.
. James E. Welsh, Presiding Judge, writes for the majority.
Robert M. Clayton III, Special Judge, writes in a separate concurring opinion.
Anthony R, Gabbert, Judge, writes for the dissent.

. The American Civil Liberties Union of Missouri Foundation and the American Civil Liberties Union Foundation Lesbian, Gay, Bisexual, Transgender and HIV Project filed a joint amici curiae brief in support of Pittman. We refer to the amici curiae collectively as the ACLU.

. We added the emphasis.

. See Cal. Gov’t Code § 12940; Colo.Rev.Stat. § 24-34-402; Conn. Gen.Stat. § 46a-60; Del.Code Ann. tit. 19, § 710; Haw.Rev.Stat. § 378-2; 775 Ill. Comp. State 5/1-102; Iowa Code § 216.6; Me.Rev.Stat. Ann. tit. 5 § 4572; Md.Code Ann. State Gov't § 20-606; Mass. Gen. Laws Ann. ch. 15IB, § 4; Minn. Stat. § 363A.08; Nev.Rev.Stat. § 613.330; N.H.Rev.Stat. Ann. § 354-A:7; NJ.Rev.Stat. § 10:5-4; N.M. Stat. Ann. § 28-1-7; N.Y. Exec. Law § 296; Or.Rev.Stat. § 659A.030; R.I. Gen. Laws § 28-5-7; Vt. Stat. Ann. tit. 21, § 495; Wash. Rev.Code § 49.60.180; Wis. Stat. § 111.36; D.C.Code Ann. § 2-1402.11.

.Attempts to amend ' the Missouri Human Rights Act to prohibit discrimination based upon sexual orientation have repeatedly been introduced in the legislature but have repeatedly failed. Alex Edelman, Show-Me No Discrimination: The Missouri Non-Discrimination Act and Expanding Civil Rights Protections to Sexual Orientation or Gender Identity, 79 UMKC. L.Rev. 741 (2011).

. Price Waterhouse did not declare that a claim of discrimination based upon sexual orientation is cognizable under Title VII as a discrimination claim based upon sex. Price Waterhouse merely held that a plaintiff may prevail on a discrimination claim on the basis of sex under a gender stereotyping theory. Indeed, numerous federal courts have heid that a claim of discrimination based upon sexual orientation is not cognizable under Title VII. See Etsitty v. Utah Transit Auth., 502 F.3d 1215, 1222 (10th Cir. 2007); Vickers v. Fairfield Med. Ctr., 453 F.3d 757, 764-65 (6th Cir. 2006); Dawson v. Bumble & Bumble, 398 F.3d 211, 217 (2d Cir. 2005); Schroeder v. Hamilton Sch. Dist., 282 F.3d 946, 951 (7th Cir. 2002); Bibby v. Phila. Coca Cola Bottling Co., 260 F.3d 257, 261 (3d Cir. 2001); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 259 (1st Cir. 1999); Wrightson v. Pizza Hut of Am., Inc., 99 F.3d 138, 143 (4th Cir. 1996); Williamson v. A.G. Edwards & Sons, Inc., 876 F.2d 69, 70 (8th Cir. 1989).'

. Pittman, merely argued gender stereotyping in response to Cook Paper’s motion to dismiss his petition and then again in his brief on appeal. Even then, Pittman merely asserted that “sexuaf stereotyping is a form of sex discrimination and is akin to discrimination on the basis of sexual orientation.”

. We recognize that the United States Equal Employment Opportunity Commission recently handed down a decision in Complainant v. Anthony Foxx, Secretary, Dep’t of Transp. (Fed’l Aviation Admin), Agency, EEOC DOC 0120133080, 2015 WL 4397641 (E.E.O.C. July 16, 2015), in which it declared that allegations of discrimination on the basis of sexual orientation state a claim of discrimination on the basis of sex under Title VII. This decision, however, is merely an administrative agency’s interpretation of the words of a statute that the United States Congress enacted and is in no way binding on this court, We decline to rely on an administrative interpretation of the term "sex” under Title VII to declare the intent of the Missouri Legislature on a Missouri statute, especially on a matter that involves public policy. It is not our role to question the public policy values of a legislatively enacted scheme. Moreover, the United States Supreme Court has never declared that discrimination on the basis of sexual orientation states a claim of discrimination on the basis of sex under Title VII. Indeed, in the Supreme Court’s recent decision finding that same-sex couples have the fundamental right to marry, the Supreme. Court acknowledged that the Supreme Court of Hawaii had held' that "Hawaii’s law restricting marriage to opposite-sex couples constituted a classification on the basis of sex,” Obergefell v. Hodges,-U.S.-, 135 S.Ct. 2584, 2596, 192 L.Ed.2d 609 (2015) (citing Baehr v. Lewin, 74 Haw. 530, 852 P.2d 44 (1993)), but the Supreme Court did not base its ruling upon the same rationale and instead concluded that the right to marry was "a fundamental right inherent in the liberty of the person” under the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution. , Id. at 2604. As previously stated,' we maintain that it is not this court’s role to rewrite the statutes that the legislature has enacted no matter how much such rewriting'is desired by a particular group or, indeed, by this court or any other tribunal. Our role is limited to interpreting and applying the statute as it currently exists.