Lampley and Frost were represented by Jill A. Silverstein, D. Eric Sowers, Ferne P. Wolfe and Joshua M. Pierson of Sowers & Wolf LLC in St. Louis, (314) 744-4010.
The commission and its executive director were represented by State Solicitor D. John Sauer and Deputy Solicitor Julie M. Blake of the attorney general's office in Jefferson City, (573) 751-3321; and Bruce Farmer and Bart A. Matanic of the state's department of labor and industrial relations in Jefferson City, (573) 751-3844.
The American Civil Liberties Union of Missouri and a number of other organizations, which filed a brief as friends of the Court, were represented by Anthony E. Rothert of the ACLU of Missouri in St. Louis, (314) 652-3114.
George W. Draper III, Judge *19 Harold Lampley (hereinafter, "Lampley") and Rene Frost (hereinafter, "Frost") appeal from the circuit court's grant of summary judgment in favor of the Missouri Commission on Human Rights (hereinafter, "the Commission") on their consolidated allegations of violations of the Missouri Human Rights Act, section 213.010 et seq. , RSMo 2000 (hereinafter, "the Act").[1] The circuit court's judgment is reversed, and the case is remanded.[2]
Factual and Procedural History
The facts viewed in the light most favorable to Lampley and Frost are as follows: In July 2014, Lampley filed charges of sex discrimination and retaliation against his employer, the State of Missouri, Department of Social Services Child Support Enforcement Division (hereinafter, "Employer"), pursuant to sections 213.055.1(1) and 213.070.1(2) of the Act. Lampley's "Charge of Discrimination" form submitted to the Commission provided a list of discriminatory actions and instructed the complainant to check the appropriate boxes. Lampley checked boxes indicating he was discriminated against based on "sex" and "retaliation." Lampley also provided a more detailed factual summary of his claims.
In his factual recitation, Lampley stated he is a gay man. Lampley elaborated he does not exhibit the stereotypical attributes of how a male should appear and behave. Lampley alleged other similarly situated co-workers, those who were not gay and exhibited stereotypical male or female attributes, were treated differently. Because he exhibited non-stereotypical behaviors, Lampley asserted he was subjected to harassment at work. Further, Lampley alleged he was grossly underscored in a performance evaluation in retaliation for his complaints.
In December 2014, Frost submitted her "Charge of Discrimination" form to the Commission. The charge of discrimination contained the same list of discriminatory actions and instructions as Lampley's. Frost checked boxes indicating she was discriminated due to "retaliation" and "other." Following the indication of "other" discrimination, Frost wrote, "Association with person protected by section 213.010 et seq. " Frost also provided a more detailed factual summary of her claims.
In her factual recitation, Frost detailed her close friendship with Lampley, noting his non-stereotypical attributes of how a male should appear and behave. Frost alleged she filed a complaint against Employer for violating its policy and breaching confidentiality after publicly announcing her performance review. Frost believes Employer's conduct stemmed from her friendship with Lampley. After filing her complaint, Employer moved Frost's desk away from Lampley and other co-workers with whom she collaborated. Frost was informed she and Lampley were no longer allowed to eat lunch together. Unlike other employees, Frost and Lampley had vacation time docked for meeting with their union representative. Frost alleged she continued to suffer from Employer's verbal abuse, *20 threats about her performance review, and other harassing behaviors.
The Commission opened investigations into Lampley and Frost's claims. The Commission's investigator assumed Lampley's claim of discrimination based on sex meant "sexual orientation." The investigator concluded sexual orientation is not protected by the Act. Similarly, the investigation summary of Frost's claim asserted her claim of "association with someone who is gay" is not protected by the Act. Subsequently, the Commission terminated its proceedings in both matters in 2015, stating Lampley's and Frost's complaints do not involve a category covered by the Act.[3] The matters were closed administratively.
Lampley and Frost filed petitions for administrative review or, alternatively, a writ of mandamus, asking the circuit court to direct the Commission to issue notices of right-to-sue letters. Both petitions made the same averments as in their respective charges of discrimination. The circuit court consolidated their petitions. The parties filed cross-motions for summary judgment. The circuit court sustained the Commission's summary judgment motion, finding Lampley's and Frost's claims fail under Pittman v. Cook Paper Recycling Corp. , 478 S.W.3d 479 (Mo. App. W.D. 2015). Lampley and Frost appeal.
Noncontested Case
In any administrative matter, the determination of whether the proceeding was contested or noncontested is determined as a matter of law. City of Valley Park v. Armstrong , 273 S.W.3d 504, 506 (Mo. banc 2009).
Contested cases provide the parties with an opportunity for a formal hearing with the presentation of evidence, including sworn testimony of witnesses and cross-examination of witnesses, and require written findings of fact and conclusions of law. The review of a contested case is a review by the trial court of the record created before the administrative body.... Non-contested cases do not require formal proceedings or hearings before the administrative body. As such, there is no record required for review. In the review of a non-contested decision, the circuit court does not review the administrative record, but hears evidence, determines facts, and adjudges the validity of the agency decision.
Furlong Co., Inc. v. City of Kansas City , 189 S.W.3d 157, 165 (Mo. banc 2006) (internal citations omitted). Because there was no hearing at the Commission, this case is a noncontested case. Kinzenbaw v. Dir. of Rev. , 62 S.W.3d 49, 52 (Mo. banc 2001).
Section 536.150 governs the standard of judicial review for noncontested cases. Armstrong , 273 S.W.3d at 508. While Lampley's and Frost's petitions stated they were seeking mandamus review pursuant to section 536.150, review of a noncontested case may be "by suit for injunction, certiorari, mandamus, prohibition or other appropriate action...." Section 536.150.1.[4] There is no limitation, as *21 suggested by the dissenting opinion, a noncontested case must proceed by writ of mandamus because the statute governing noncontested review clearly delineates multiple avenues to pursue relief. "The circuit court does not review the record for competent and substantial evidence, but instead conducts a de novo review in which it hears evidence on the merits, makes a record, determines the facts and decides whether the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious or otherwise involves an abuse of discretion." Id.
The dissenting opinion finds this case is procedurally deficient based upon the guidelines set forth in the concurring opinion in U.S. Dept. of Veterans Affairs v. Boresi , 396 S.W.3d 356, 364 (Mo. banc 2013). The concurring opinion in Boresi sets forth the procedure for mandamus in the circuit court and suggests a court should not issue a writ that fails to follow that procedure strictly. Id. The Boresi concurring opinion is not binding on this Court. Canary Taxicab Co. v. Terminal Ry. Ass'n of St. Louis , 316 Mo. 709, 294 S.W. 88, 92 (Mo. banc 1927). The principal opinion acknowledged the proper writ procedure, but noted the parties and the circuit court's failure to follow the writ procedure strictly, stating,
[T]his Court is exercising its discretion to consider the matter on the merits and issue the writ because the parties, who already have litigated the matter fully, were not at fault and should not be required to initiate a new writ proceeding due to the circuit court's failure to follow the procedure proscribed by the rules.
Boresi , 396 S.W.3d at 359 n.1. Further, the principal opinion recognized this Court is not required to exercise discretion in future matters. Id. However, the Court did not foreclose the possibility of exercising its discretion either.
Following Boresi , this Court was presented with two situations wherein the parties failed to follow the proper writ procedure. See Tivol , 527 S.W.3d at 842 and Bartlett , 528 S.W.3d at 913, issued the same day in 2017. In Tivol , this Court opted to exercise its discretion as in Boresi because the case was litigated "as if the circuit court had issued a preliminary order in mandamus and then denied the permanent writ." Tivol , 527 S.W.3d at 842. Further, the Court noted the lack of fault on the part of the parties and the importance of the issues in the case. Id. Again the Court cautioned, "Parties should not expect unending tolerance from the appellate courts for such failures to follow Rule 94.04, however, particularly when the question is not of such general interest or when the parties were made aware of the failure to follow Rule 94...." Id.[5]
In contrast, in Bartlett , "this Court declined to exercise its discretion to treat the summons as a preliminary order, for in that case the plaintiff told the clerk to issue a summons rather than treat the matter as a writ and repeatedly declined to *22 follow the procedure applicable to writs despite numerous motions by the State requesting the court order the plaintiff to do so." Tivol , 527 S.W.3d at 842. The Court reiterated its warning from Boresi : "This Court is not required to exercise its discretion in like manner in the future." Bartlett , 528 S.W.3d at 914. Then, this Court dramatically declared the "future has now arrived." Id. This Court did not announce that the arrival of the future also meant an obliteration of the past. Neither Boresi , Tivol , nor Bartlett restricts this Court's ability to choose to exercise its discretion, if appropriate, in another case.
This case is more comparable to Tivol than to Bartlett . None of the parties nor the circuit court objected to or questioned the procedure. Additionally, addressing charges of sex discrimination based upon sexual stereotyping evidence is an important issue this Court has not addressed. Most importantly, Lampley and Frost filed their petitions in the circuit court in 2015. This Court's 2017 guidance in Tivol and Bartlett was not available at the time this case was presented to the circuit court. Hence, while the litigants should strive to follow the proper procedure in any litigation, it is clear the participants in this case believed they were acting properly. This Court will not penalize them for failing to follow precedent not established at the time.
Standard of Review
This Court's review of an appeal from summary judgment is de novo. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp. , 854 S.W.2d 371, 376 (Mo. banc 1993). When considering an appeal from summary judgment, this Court reviews the record in the light most favorable to the party against whom judgment was entered and affords that party the benefit of all reasonable inferences. Lewis v. Gilmore , 366 S.W.3d 522, 524 (Mo. banc 2012). Summary judgment is appropriate when the record demonstrates there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Hargis v. JLB Corp. , 357 S.W.3d 574, 577 (Mo. banc 2011). "Summary judgment seldom should be used in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence." Farrow v. Saint Francis Med. Ctr. , 407 S.W.3d 579, 588 (Mo. banc 2013) (quoting Hill v. Ford Motor Co. , 277 S.W.3d 659, 664 (Mo. banc 2009) ).[6]
The Act
Section 213.055.1(1)(a) provides it is an unlawful employment practice "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of ... sex...." "When reviewing cases under the [Act, appellate courts] are guided by both Missouri law and any federal employment discrimination (i.e., Title VII) case law that is consistent with Missouri law." Diaz v. Autozoners, LLC , 484 S.W.3d 64, 76 (Mo. App. W.D. 2015) (quoting Tisch v. DST Sys., Inc. , 368 S.W.3d 245, 252 n.4 (Mo. App. W.D. 2012) ). The Act "is clear that if an employer considers age, disability or other protected characteristics when making an employment decision, an employee has made a submissible case for discrimination."
*23 Templemire v. W & M Welding, Inc. , 433 S.W.3d 371, 383 (Mo. banc 2014).
Further, the Act is a remedial statute. Howard v. City of Kansas City , 332 S.W.3d 772, 779 (Mo. banc 2011). "Remedial statutes should be construed liberally to include those cases which are within the spirit of the law and all reasonable doubts should be construed in favor of applicability to the case." Mo. Comm'n on Human Rights v. Red Dragon Rest., Inc. , 991 S.W.2d 161, 166-67 (Mo. App. W.D. 1999) (quoting State ex rel. Ford v. Wenskay , 824 S.W.2d 99, 100 (Mo. App. E.D. 1992) ).
Applicability of Pittman
The circuit court relied on Pittman to justify the Commission's termination of Lampley's and Frost's claims. In Pittman , James Pittman (hereinafter, " Pittman ") asserted his employer discriminated against him because he was a homosexual male. Pittman stated he suffered disparaging comments about his lifestyle at work and was treated more harshly than a heterosexual male when he terminated his long-term relationship. Pittman , 478 S.W.3d at 481. Pittman claimed his employer "caused the workplace to be an objectively hostile and abusive environment based on sexual preference." Id. Pittman brought a claim for sex discrimination under the Act, alleging he was harassed and terminated from his employment because of his sexual orientation. Id. at 482. The circuit court dismissed Pittman's petition for failure to state a claim. Id. at 480. A divided panel of the Western District affirmed the circuit court's judgment, finding the Act does not prohibit discrimination on the basis of sexual orientation. Id. at 485.
The circuit court in this case relied upon Pittman 's holding the Act does not include claims for sex discrimination based upon sexual orientation and extended that rationale to include claims for sex discrimination based upon sex stereotyping. The circuit court reasoned sex stereotyping, like sexual orientation, is not listed specifically in the Act, and the Commission's exclusion of Lampley and Frost's claims was reasonable.
Pittman , however, declined to address whether sex discrimination based on sex stereotyping was covered under the Act because that claim was not at issue in Pittman . Contrary to the circuit court's suggestion, Pittman provides no support for the Commission's decision. Lampley's sexual orientation was merely incidental to the sex discrimination complaints filed. Lampley and Frost specifically stated they were discriminated against on the basis of sex because Lampley did not conform to generally held sexual stereotypes. Because the Commission erroneously characterized their claims as sexual orientation discrimination, the circuit court's reliance on Pittman is misplaced.
Sex Discrimination
In Lampley and Frost's charges of discrimination filed with the Commission and in their petitions with the circuit court, they alleged they were subjected to sex discrimination by Employer because of Lampley's non-stereotypical characteristics. Lampley and Frost assert the circuit court erred in issuing summary judgment in favor of Employer because the Act covers sex discrimination.
The dissenting opinion wrongly characterizes Lampley and Frost as only seeking relief from sexual stereotyping on appeal and the underlying charge before the Commission was based upon sexual orientation. This assertion is wrong. In both charges of discrimination, Lampley and Frost stated Lampley was gay, but this fact is incidental to the basis for the discrimination.
*24 They asserted they were discriminated against because Lampley does "not exhibit the stereotypical attributes of how a male should appear and behave." They also asserted, "Similarly situated co-workers ... are treated differently than [Lampley]. These similarly situated co-workers are not gay, and they exhibit the stereotypical attributes of how a male or female should appear and behave." There was no allegation the discrimination was based upon his sexual orientation. Further, there are multiple allegations Lampley, and by association Frost, was discriminated against because of his sex.
The Act clearly provides it is an unlawful employment practice for an employer to discriminate on the basis of sex. Section 213.055.1(1)(a). For an employee to establish a prima facie case of sex discrimination in the workplace, the employee must demonstrate: (1) the employee was a member of a protected class; (2) the employee was qualified to perform the job; (3) the employee suffered an adverse employment action; and (4) the employee was treated differently from other similarly situated employees of the opposite sex. Ressler v. Clay Cty. , 375 S.W.3d 132, 141 (Mo. App. W.D. 2012) ; Ruppel v. City of Valley Park , 318 S.W.3d 179, 185 (Mo. App. E.D. 2010). "The fourth element of a prima facie discrimination case also can be met if the employee provides 'some other evidence that would give rise to an inference of unlawful discrimination.' " Buchheit, Inc. v. Mo. Comm'n on Human Rights , 215 S.W.3d 268, 277 (Mo. App. W.D. 2007) (quoting Turner v. Gonzales , 421 F.3d 688, 694 (8th Cir. 2005) ).
Stereotyping may give rise to an inference of unlawful discrimination upon a member of a protected class. In Price Waterhouse v. Hopkins , 490 U.S. 228, 235, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989), a female senior manager was denied partnership after partners referred to her as "macho" and needing "a course at charm school." She was advised that to become a partner she needed to "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." Id. at 251, 109 S.Ct. 1775, 1791. The Supreme Court recognized when an employer relies upon sex stereotypes in its employment decisions, that evidence may support an inference of sex discrimination. Id. at 235, 109 S.Ct. 1775, 1791. The Supreme Court explained, "[W]e are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group, for '[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.' " Id. at 251, 109 S.Ct. 1775, 1791 (quoting Los Angeles Dep't of Water and Power v. Manhart, 435 U.S. 702, 707, n.13, 98 S.Ct. 1370, 1375, n.13, 55 L.Ed.2d 657 (1978) ).
Since Price Waterhouse , it is clear an employer who discriminates against "women because, for instance, they do not wear dresses or makeup, is engaging in sex discrimination because the discrimination would not occur but for the victim's sex. " Lewis v. Heartland Inns of Am., L.L.C. , 591 F.3d 1033, 1040 (8th Cir. 2010) (emphasis in original) (quoting Smith v. City of Salem, Ohio , 378 F.3d 566, 574 (6th Cir. 2004) ). Further, " Price Waterhouse applies with equal force to a man who is discriminated against for acting too feminine." Nichols v. Azteca Rest. Enters., Inc. , 256 F.3d 864, 874 (9th Cir. 2001).
In Christiansen v. Omnicom Group, Inc. , 852 F.3d 195, 199 (2d Cir. 2017), the Second Circuit upheld the district court's holding that sexual orientation discrimination *25 is not protected by Title VII, but reversed its holding regarding the plaintiff's sexual stereotyping claim, relying on Price Waterhouse 's analysis to find a homosexual male had a cognizable claim under Title VII. The court found "gay, lesbian, and bisexual individuals do not have less protection under Price Waterhouse against traditional gender stereotype discrimination than do heterosexual individuals." Id. at 200-01 (emphasis in original). However, standing alone, the characteristic of being gay, lesbian, or bisexual cannot sustain a sex stereotyping claim. Id. at 201.[7] The court found, under Price Waterhouse , "at a minimum, 'stereotypically feminine' gay men could pursue a gender stereotyping claim under Title VII (and the same principle would apply to 'stereotypically masculine' lesbian women)." Id. at 200.
Federal courts have distinguished between discrimination based on sexual orientation and sex discrimination as evidenced by sex stereotyping. They have held Price Waterhouse 's sex stereotyping analysis applies to homosexual people who allege discrimination based upon their failure to conform to sex stereotypes. While a Missouri court has not had the opportunity to address a sex discrimination claim based upon sexual stereotyping until now, the rules and regulations promulgated by the Commission support applying this analysis here as well. The Commission has the power and duty to "adopt, promulgate, amend, and rescind suitable rules and regulations to carry out the provisions of this chapter and the policies and practices of the [C]ommission in connection therewith." Section 213.030.1(6). When a complaint is filed with the Commission, the Commission needs to investigate the complaint properly. Section 213.075.3. "The investigation, determination of probable cause and conciliation shall be conducted according to such rules, regulations and guidelines as the [C]ommission shall prescribe." Id.
To comply with its statutory duties, the Commission established Rule 8 CSR 60-3.040. Rule 8 CSR 60-3.040(2)(A)2 provides an employer may not refuse "to hire an individual based on stereotyped characterizations of the sexes.... The principle of nondiscrimination requires that individuals be considered on the basis of individual capacities and not on the basis of any characteristics generally attributed to the group...."
Because the Commission's promulgated rules already characterize sexual stereotyping as an unlawful hiring practice, it follows that sexual stereotyping during employment is an unlawful employment practice. These rules are an application of the holdings of the United States Supreme Court and other federal courts. Accordingly, under these regulations and federal law, an employee who suffers an adverse employment decision based on sex-based stereotypical attitudes of how a member of the employee's sex should act can support an inference of unlawful sex discrimination. Sexual orientation is incidental and irrelevant to sex stereotyping. Sex discrimination is discrimination, it is prohibited by the Act, and an employee may demonstrate this discrimination through evidence of sexual stereotyping.
*26 The Commission had the statutory authority to investigate Lampley's and Frost's claims, but the Commission unreasonably and erroneously assumed that because Lampley was homosexual, there was no possible sex discrimination claim other than one for sexual orientation. Lampley and Frost should have been allowed to demonstrate whether the alleged sexual stereotyping motivated Employer's alleged discriminatory conduct. The Commission had the authority to issue a right-to-sue letter so the trier of fact could then determine whether their claims for sex discrimination were due to sexual stereotyping. However, the Commission terminated its investigation into Lampley and Frost's claims of sex discrimination, thereby precluding any investigation of genuine issues of material fact. The circuit court's grant of summary judgment in favor of the Commission was incorrect; the Commission erred in terminating its inquiry.
Lampley and Frost request reversal of the Commission's determination that it had no authority to investigate their claims and an order directing the Commission to reopen the administrative proceedings. However, the time for administrative investigation has expired because the Commission is limited to 180 days to process a complaint once the complaint is filed. Section 213.111.1. Once the 180-day time limitation has expired, the Commission must cease all activity on a complaint and issue a right-to-sue letter. Id. ; Tivol , 527 S.W.3d at 845. Because it has been more than 180 days since Lampley and Frost filed their charges of discrimination, the Commission has no authority to investigate their claims. The appropriate remedy would be to construe their request as seeking right-to-sue letters and direct the Commission to provide such letters.
Conclusion
The circuit court's judgment is reversed, and the case is remanded. Upon remand, the circuit court is directed to remand to the Commission with instructions to issue Lampley and Frost right-to-sue letters.
Breckenridge and Stith, JJ., concur; Wilson, J., concurs in separate opinion filed; Russell, J., concurs in opinion of Wilson, J.; Fischer, C.J., concurs in part and dissents in part in separate opinion filed; Powell, J., dissents in separate opinion filed.
CONCURRING OPINION
Paul C. Wilson, Judge
The question presented in this case is whether the charges filed before the Missouri Commission on Human Rights ("Commission") by Harold Lampley ("Lampley") and Rene Frost ("Frost") (collectively, "the Claimants") properly invoke the Commission's jurisdiction because they state claims under the Missouri Human Rights Act (MHRA). Those claims do invoke the Commission's jurisdiction and, therefore, the principal opinion is correct in holding that the circuit court's judgment in this case should be reversed and the case remanded for further proceedings.
This case should be analyzed and disposed of entirely on the basis of whether the facts alleged by Claimants assert sex discrimination claims covered by the MHRA. As explained below, they plainly do. But the principal opinion does not stop there. Instead, it proceeds to opine on whether "sex stereotyping," as discussed in the Title VII context in Price Waterhouse v. Hopkins , 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), is a type of sex discrimination under the MHRA. But, as explained by this Court in R.M.A., by his next friend:
*27 Rachelle Appleberry v. Blue Springs R-IV School District , 568 S.W.3d 420 n.4, 2019 WL 925511 (Mo. banc 2019) (No. SC96683), also handed down on this date:
[T]he MHRA does not provide for "types" of sex discrimination claims; a claim is either a claim of sex discrimination or it is not. Rather than a "type" of sex discrimination claim, "sex stereotyping" merely is one way to prove a claim of sex discrimination, i.e., "sex stereotyping" can be evidence of sex discrimination. Price Waterhouse , itself, makes this clear:
Remarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision. The plaintiff must show that the employer actually relied on her gender in making its decision. In making this showing, stereotyped remarks can certainly be evidence that gender played a part.
Id. at 251 [109 S.Ct. 1775] (emphasis added). Accordingly, because the issue is whether R.M.A.'s petition states a claim for sex discrimination, this Court must leave for another day consideration of the proof of that claim, including any proof of "sex stereotyping."
[Emphasis in original.]
Here, as in R.M.A. , the charges filed by both Claimants before the Commission allege ultimate facts sufficient to prove claims of sex discrimination under the MHRA, and questions of how or whether Claimants can prove their claims are premature.
BACKGROUND
Lampley worked for the Missouri Department of Social Services ("Social Services") beginning in May 2013. In December 2014, Lampley filed an Amended Charge of Discrimination ("Amended Charge") under section 213.055[1] with the Commission and the Equal Employment Opportunity Commission ("EEOC"). In particular, Lampley alleges his supervisors at Social Services, Steven Kissinger ("Kissinger") and Cathy Woods ("Woods") (and, collectively with Social Services, "Employer"), created a hostile work environment and discriminated against Lampley because of Lampley's sex.
Also in December 2014, Frost filed an Amended Charge of sex discrimination by association under section 213.070.1(4) with the Commission and EEOC. In particular, Frost alleges she suffered discriminatory treatment from Employer because of her association with Lampley, who - in turn - suffered sex discrimination in violation of the MHRA.
Lampley's and Frost's Amended Charges were timely filed with the Commission, but those charges were dismissed for lack of jurisdiction because the Commission's executive director determined Lampley did not allege sex discrimination, which is prohibited by the MHRA, but instead alleged only discrimination on the basis of sexual orientation, which the executive director concluded is not prohibited by the MHRA. As a result, all proceedings were terminated with respect to Lampley's charge (and Frost's charge based on association with Lampley), and no notices of right to sue were issued.
Lampley and Frost filed petitions for judicial review of this administrative decision by the Commission and its executive director, Alisa Warren, in the Cole County Circuit Court.[2] The petitions were consolidated.
*28 The parties filed cross-motions for summary judgment on whether the Commission had jurisdiction over Lampley's and Frost's cases. The circuit court granted the Commission's motion on the ground that - because Lampley's and Frost's charges were based solely on claims of discrimination based on sexual orientation and gender stereotyping, neither of which the circuit court concluded were prohibited by the MHRA - the Commission had no jurisdiction to consider their charges.
ANALYSIS
This Court's review of an appeal from summary judgment is de novo. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp. , 854 S.W.2d 371, 376 (Mo. banc 1993). Even though the procedural contexts are different,[3] the analysis of these claims is precisely the same as that performed in R.M.A. The only question is whether the Claimants have pleaded sufficient ultimate (not merely evidentiary) facts to state claims under the MHRA. R.M.A. , 568 S.W.3d. at 425-26 ; Scheibel v. Hillis , 531 S.W.2d 285, 290 (Mo. banc 1976). "When considering whether a petition fails to state a claim upon which relief can be granted, this Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." Bromwell v. Nixon , 361 S.W.3d 393, 398 (Mo. banc 2012). "The Court does not weigh the factual allegations to determine whether they are credible or persuasive." Id. Nor does it matter that "these averments may well be difficult to ... prove at trial."
*29 Nazeri v. Mo. Valley Coll. , 860 S.W.2d 303, 312 (Mo. banc 1993). The only thing that matters is whether "the facts alleged meet the elements of a recognized cause of action." Bromwell , 361 S.W.3d at 398.
Lampley claims he suffered sex discrimination in violation of section 213.055. This statute provides, in relevant part:
It shall be an unlawful employment practice ... [f]or an employer, because of the ... sex ... of any individual ... to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ... [t]o limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex....
§ 213.055.1.
As explained in R.M.A. , allegations of the ultimate facts are all that is required, and one reliable source for determining what the ultimate facts are with respect to a given cause of action is the verdict director that would be given if the matter were tried to a jury. R.M.A. , 568 S.W.3d at 425-26 ; Johnson v. Auto Handling Corp. , 523 S.W.3d 452, 463 (Mo. banc 2017). A verdict director for Lampley's sex discrimination claim, if it were tried to a jury, would have to conform to Missouri Approved Instruction (MAI) 38.01(A). Though the wording would vary at trial based upon the proof, for present purposes of evaluating Lampley's allegations, such a verdict director would require proof as follows:
Your verdict must be for plaintiff [Lampley] if you believe:
First, defendant [Employer] discriminated against plaintiff with respect to his compensation, terms, conditions, or privileges of employment, and
Second, plaintiff's male sex was a contributing factor[4 ] in such discrimination, and
Third, as a direct result of such conduct, plaintiff sustained damage.
In other words, Lampley's charge before the Commission was required to allege ultimate facts sufficient to show: (1) he suffered an act of discrimination prohibited by section 213.055; (2) he is a member of a protected class, i.e., male; (3) causation, i.e., his male sex was a contributing factor (or motivating factor) in that discrimination; and (4) damages. Lampley's Amended Charge alleges ample facts to meet these requirements.
First, Lampley alleges ultimate facts sufficient to show discriminatory treatment in his employment at Social Services. His Amended Charge states:
• "Starting in September 2013, Kissinger began to verbally harass me by speaking to me in an aggressive and condescending manner, and he would direct me to report to his office for closed-door meetings about my performance." Amended Charge at ¶ 7.
*30 • "Kissinger's verbal abuse, banging on my cubical walls and repeated orders to report to his office are harassing to me because those actions are humiliating, intimidating, and bullying." Id. at ¶ 9.
• "I have very limited ability to respond because Kissinger is my boss and I fear retaliation in the form of poor performance evaluations and increased harassment." Id.
• "After I first complained to Woods, Kissinger threatened me by telling me that he writes reviews and that I have no reason to talk to anyone else besides him." Id. at ¶ 11.
• "My probationary review of April 18 and April 21, 2014 by Kissinger was lower and inconsistent with my actual numbers and performance." Id. at ¶ 13.
Accordingly, Lampley's Amended Charge plainly pleads sufficient ultimate facts to meet the first element of a sex discrimination claim under the MHRA.
Second, Lampley alleges ultimate facts sufficient to show membership in a protected class, i.e., of the male sex. In his Amended Charge, he states, "I am a male...." Id. at ¶ 2. This allegation, by itself, is sufficient for purposes of determining whether Lampley's charge sufficiently alleges the second element of a claim under the MHRA.[5]
Third, Lampley alleges sufficient ultimate facts to show that his male sex was a contributing factor in Employer's adverse employment action. He alleges: "The Department of Social Services, Kissinger and Woods treat me differently than my co-workers and created a hostile work environment for me because of my sex." Id. at ¶ 19. As with the second element, this allegation - alone - is sufficient to meet the third element of a sex discrimination claim under the MHRA.
Fourth, Lampley alleges ultimate facts sufficient to show damages. His Amended Charge states: "As a result of the conduct of Kissinger, Woods and other management in the Department of Social Services, I have suffered damages, included but not limited to emotional distress and loss of enjoyment of life." Id. at ¶ 21. This statement is sufficient to meet the fourth element, i.e., damages.
Because Lampley alleges sufficient ultimate facts to establish all four of the elements of a sex discrimination claim under the MHRA, the Commission's executive director erred in determining the Commission had no jurisdiction over Lampley's claim, and the circuit court erred in failing to grant Lampley relief. And, because this case can be disposed of entirely as a routine application of the pleading standards, the principal opinion should not have gone on to consider other issues such as whether Pittman v. Cook Paper Recycling Corp. , 478 S.W.3d 479 (Mo. App. 2015), was wrongly decided and whether sex discrimination *31 can be proved by evidence of "sex stereotyping."
The analysis of Frost's allegations is similar but somewhat different because her claim is that she was discriminated against based on her association with Lampley. Under section 213.070, "It shall be an unlawful discriminatory practice ... [t]o discriminate in any manner against any other person because of such person's association with any person protected by this chapter." § 213.070. Because Lampley adequately alleges a claim of sex discrimination under the MHRA - which Frost re-alleges in her Amended Charge - Frost was required to allege sufficient ultimate facts to show: (1) she suffered an act of discrimination prohibited by section 213.070; (2) she is associated with Lampley, who is male (i.e., a member of a protected class under the MHRA) and who has suffered discrimination prohibited by section 213.055 of the MHRA; (3) causation, i.e., her association with Lampley was a contributing factor (or motivating factor) in the discrimination she suffered; and (4) damages. Frost's Amended Charge alleges ample facts to meet these requirements.
First, Frost alleges ultimate facts sufficient to show she suffered discrimination of the sort prohibited by the MHRA. Her Amended Charge states: "Approximately 2 weeks prior to my ... probationary review by Kissinger, Kissinger began to verbally harass me during a one-on-one meeting in his office by threatening to give me a poor performance review...." Amended Charge at ¶ 7. "Kissinger's verbal abuse, relocating my desk, ostracizing and isolating me from my co-workers, threatening my performance review, prohibiting me from having lunch with Lampley, among other harassing behavior are humiliating, intimidating, and bullying." Id. at ¶ 12. Accordingly, Frost's Amended Charge plainly pleads sufficient ultimate facts regarding Employer's discrimination against her with respect to her compensation, terms, conditions, or privileges of employment.
Second, Frost alleges ultimate facts sufficient to show association. Her Amended Charge states: "I am a friend and co-worker of Harold Lampley, a male who is gay and who does not exhibit the stereotypical attributes of how a male should appear and behave." Id. at ¶ 2 (emphasis added). The emphasized portion of this allegation, by itself, is sufficient to meet the association element of Frost's claim.
Third, Frost alleges ultimate facts sufficient to show causation. Her Amended Charge states, "Kissinger knew that I was good friends with ... Lampley...." Id. at ¶ 6. Frost further states, "The Department of Social Services, Kissinger, Woods and [Beverly] Struemph[, the HR Manager,] treat me differently than my co-workers and created a hostile work environment for me because of my association with Lampley...." Id. at ¶ 20. As with Lampley's allegations of "but for" causation, this allegation is sufficient to establish the causation element of Frost's MHRA claim, regardless of whether the "substantial factor" test or the "motivating factor" test applies.
Fourth, Frost alleges ultimate facts sufficient to show damages. Her Amended Charge states: "As a result of the conduct of Kissinger, Woods and Struemph and other management in the Department of Social Services, I have suffered damages, including but not limited to emotional distress, physical illness related to stress that requires constant medication to treat anxiety and depression, repeated visits to my doctor, and loss of enjoyment of life." Id. at ¶ 22. These are sufficient allegations to meet the damages element.
Accordingly, Frost's Amended Charge also alleges sufficient ultimate facts to state an association claim for sex discrimination *32 under the MHRA. § 213.070. As a result, the Commission's executive director erred in determining the Commission had no jurisdiction over Frost's claim, and the circuit court erred in failing to grant Frost relief.
As noted in R.M.A. , "[t]his same simple and straightforward analysis has also been utilized in federal court." R.M.A. , 568 S.W.3d. at 428. In Wrightson v. Pizza Hut of Am., Inc. , 99 F.3d 138 (4th Cir. 1996), the Fourth Circuit reversed the dismissal of a plaintiff's complaint for failure to state a claim. In doing so, the court explained,
[W]hile it is true Title VII does not afford a cause of action for discrimination based upon sexual orientation, Wrightson does not allege that he was discriminated against because he is heterosexual. He specifically alleges in his complaint that he was discriminated against "because of his sex, male." The unequivocal allegation that he was discriminated against "because of his sex," which, for purposes of Rule 12(b)(6) must be accepted as true, is alone sufficient to withstand Pizza Hut's motion to dismiss .... Of course, even had Wrightson alleged that he was discriminated against both because he was heterosexual and because he was male, he would still state a claim under Rule 12(b)(6). [A] cause of action lies even though the discrimination against the employee is not "solely" because of the employee's sex, as long as the employee's sex was a cause of the discrimination.
Id. at 143-44 (internal citations omitted) (emphasis added). The same is true here. Lampley and Frost have each (at the very least) claimed they suffered discrimination because of Lampley's sex. And, for purposes of determining whether the charges filed with the Commission were sufficient to state a claim under the MHRA and thereby invoke the Commission's jurisdiction, these allegations must be taken as true. Cf. Bromwell , 361 S.W.3d at 398.
CONCLUSION
For the reasons set forth above, I join the principal opinion in its conclusion that the judgment of the circuit court must be reversed and the case remanded for further proceedings.

All statutory references are to RSMo 2000 unless otherwise indicated. The American Civil Liberties Union of Missouri Foundation filed a brief on appeal as amicus curiae in support of Lampley and Frost.

This Court has jurisdiction pursuant to Mo. Const. art. V, sec. 10.

The Commission issued its notice of termination to Lampley in May 2015 and its notice of termination to Frost in July 2015.

This Court ordered supplemental briefing to address whether Lampley and Frost adequately sought noncontested case review via a writ of mandamus in the circuit court. Prior to this Court's order, there was no challenge to Lampley and Frost seeking review in the circuit court. As section 536.150.1 provides for multiple avenues to seek noncontested case relief, there is no statutory requirement that review of a noncontested case must be by a writ of mandamus only. See, e.g., Hagely v. Bd. of Educ. of Webster Groves Sch. Dist. , 841 S.W.2d 663 (Mo. banc 1992) ; Kinzenbaw , 62 S.W.3d 49 ; Armstrong , 273 S.W.3d 504. A writ of mandamus may be an appropriate avenue for relief in some cases. See State ex rel. Tivol Plaza, Inc. v. Mo. Comm'n on Human Rights , 527 S.W.3d 837 (Mo. banc 2017) ; Bartlett v. Mo. Dep't of Ins. , 528 S.W.3d 911 (Mo. banc 2017).

While the dissenting opinion cites R.M.A. v. Blue Springs R-IV Sch. Dist. , 477 S.W.3d 185, 189 (Mo. App. W.D. 2015), in support of its proposition Rule 94 compliance is mandatory, R.M.A. actually states, "And if Rule 94 is not followed, then there is no right of appeal from the denial of a permanent writ of mandamus (even if on the merits), with the narrow proviso that an appeal may be permitted as a matter of discretion where a permanent writ of mandamus is denied on the merits after a trial court has issued a summons that can be fairly characterized as the 'functional equivalent' of a preliminary writ."

While espousing a simplistic approach to the standard of review, the concurring opinion has mixed standards and avoided the honest intellectual exercise required under the law when adhering to the proper standard of review. By mixing the standards of review in this case, the concurring opinion's approach could lead to incorrect analysis in future cases.

Contrary to Judge Fischer's concurring and dissenting opinion, while the Second Circuit found the mere fact of being gay, lesbian, or bisexual could not support a sexual stereotyping claim, this does not equate with a conclusion by the principal opinion that discrimination based on sexual orientation is not covered under the Act. This principal opinion makes no such statement because the resolution of whether sexual orientation is or is not covered by the Act is not issue in this case.

All statutory references are to RSMo 2000 unless otherwise indicated.

The executive director's decision referred to the Commission's lack of "jurisdiction," which is consistent with the language used in the relevant statutes and regulations pertaining to the Commission. However, the Commission's "jurisdiction" is nothing more than statutory authority and should not be equated to the subject matter jurisdiction constitutionally vested in the courts of this state. See Cass Cty. v. Dir. of Revenue , 550 S.W.3d 70, 74 (Mo. banc 2018) ; see also J.C.W. ex rel. Webb v. Wyciskalla , 275 S.W.3d 249, 255 (Mo. banc 2009) ("When a statute speaks in jurisdictional terms or can be read in such terms, it is proper to read it as merely setting statutory limits on remedies or elements of claims for relief that courts may grant.").

The principal opinion and the other two separate opinions correctly acknowledge our review of this matter is governed by § 536.150, and Lampley and Frost concede, in their supplemental briefing, contested case review of the executive director's actions is unavailable.

Lampley and Frost sought review pursuant to § 536.140 despite the clear direction from this Court in Martin-Erb and the executive director's "Notice of Termination of Proceedings," which alerted Lampley and Frost to the fact that they could seek judicial review by "filing a petition under § 536.150."

"This Court's review of a grant of summary judgment is essentially de novo; therefore, the trial court's order may be affirmed in this Court on an entirely different basis than that posited at trial, and this Court will affirm the grant of summary judgment under any appropriate theory." Turner v. Sch. Dist. of Clayton , 318 S.W.3d 660, 664 (Mo. banc 2010).