MODIFIED
JULY 22, 2025



# *In the*
# *Missouri Court of Appeals*
### *Western District*

CHERI NABIL EL-HALAWANY, M.D. )
AND LIEN PHAM RUSSELL, M.D., )
                                         )
       **Appellants,** )
                                          )    **WD87135**
V. )
                                          )    **OPINION FILED:**
THE CHILDREN'S )   **JUNE 17, 2025**
MERCY HOSPITAL, )
                                          )
       **Respondent.** )

### Appeal from the Circuit Court of Jackson County, Missouri
The Honorable John M. Torrence, Judge

Before Division Two: Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and W. Douglas Thomson, Judge

Cheri Nabil El-Halawany and Lien Pham Russell (collectively "Appellants") appeal from the grant of summary judgment by the Circuit Court of Jackson County, Missouri ("trial court"), in favor of The Children's Mercy Hospital ("CMH"), finding Appellants failed to make a prima facie case of unlawful employment discrimination on their various discrimination claims against CMH under the Missouri Human Rights Act ("MHRA"), section 213.010, *et seq.*[1] Appellants raise four points on appeal arguing:

---

[1] All statutory references are to the Missouri Revised Statues (2016), as updated by supplement through 2021 unless otherwise noted

Point I, the trial court erred in granting summary judgment because CMH failed to comply with Rule 74.04's electronic copy requirements; Point II, the trial court erred in granting summary judgment because Appellants did articulate a prima facie case of discrimination and retaliation against CMH; Point III, the trial court erred in granting CMH's motions *in limine* because it failed to adequately consider the potential relevance of the testimony and documentation Appellants should have been allowed to present at trial; and Point IV, the trial court erred in denying Appellants' motion to amend the pleading to include a claim for punitive damages. Finding no error, we affirm.

## Rule 74.04(c)(2)

At the outset, we address Appellants' noncompliance with Rule 74.04(c)(2).[2] Rule 74.04 governs summary judgment. "Facts come into a summary judgment record *only* via Rule 74.04(c)'s numbered-paragraphs-and-responses framework." *Green v. Fotoohighiam*, 606 S.W.3d 113, 117 (Mo. banc 2020) (emphasis original) (internal citation omitted). Moreover, "[c]ourts determine and review summary judgment *based on that Rule 74.04(c) record, not the whole trial court record.*" *Id.* Pursuant to Rule 74.04(c)(2), a non-movant is required to file a response to the movant's uncontroverted statement of material facts, either admitting or denying the movant's material facts. Specifically, a non-movant's denial of a material fact, "may not rest upon the mere allegations or denials of the party's pleading. Rather, the response shall support each denial with specific references to the discovery, exhibits or affidavits that demonstrate

---

[2] All Rule references are to the Missouri Supreme Court Rules (2023), unless otherwise noted.

2

specific facts showing that there is a genuine issue for trial." *Id.* A non-movant's response, "that does not comply with this Rule 74.04(c)(2) with respect to any numbered paragraph in movant's statement is an admission of the truth of that numbered paragraph." *Id.*

Appellants' responses to CMH's statement of uncontroverted material facts violate Rule 74.04(c)(2) as many responses contain lengthy arguments that are devoid of specific denials with references to specific documents that demonstrate genuine issues of material fact for trial. As such, each one of Appellants' noncompliant responses is thus an admission of truth of the facts alleged in that paragraph. Accordingly, we have compiled the following factual background from the properly supported uncontroverted facts from the summary judgment pleadings and view the record in the light most favorable to Appellants. *See Montgomery v. Coreslab Structures (Missouri), Inc.*, 697 S.W.3d 766, 769 n.2 (Mo. App. W.D. 2024).

## Factual and Procedural Background

CMH is a nonprofit children's hospital. Dr. Cheri Nabil El-Halawany ("El-Halawany") is an Egyptian woman, who was employed as a physician at CMH from November 2012 until August 2021. Dr. Lien Pham Russell ("Russell") is a Vietnamese woman, who was employed as a physician at CMH from January 2008 until August 2021. Appellants reported to Doctor G.P. from 2015 until April 6, 2021.[3]

---

[3] Pursuant to section 509.520, RSMo. (2024), this opinion only includes parties' names.

CMH entered into a partnership with Vibrant Health, resulting in CMH being responsible for providing physician staffing at the Vibrant clinic location, a federally qualified health center that serves children from lower income families. CMH promoted the importance of having pediatric residents at the Vibrant clinic location.

On November 10, 2020, Doctor G.P. emailed the General Academic Pediatrics ("GAP") Division at CMH with a call for volunteers to work shifts at the Vibrant clinic location. Subsequently, Doctor G.P. hosted a meeting where he again called for volunteers to work shifts at the Vibrant clinic location. On December 14, 2020, Doctor G.P. sent a final call for volunteers and explained that volunteering would entail a one-year commitment to the Vibrant clinic location with an additional $20,000 per 1.0 FTE salary supplement. The call for volunteers would close the following day, on December 15, 2020, at 5:00 PM. The GAP physicians were informed that if no one volunteered, some of them would be assigned to the Vibrant clinic location. No physicians volunteered by the December 15, 2020 deadline.

To determine which physicians would be assigned to the Vibrant clinic location, Doctor G.P. used three criteria to assign point values to each member of the GAP Division. The three criteria were: Clinical FTE, Roles, and Clinical Contributions. "Clinical FTE" measured the number of clinical shifts per week each physician was scheduled to work. "Roles" measured the extent to which a physician possessed job duties that required their presence at a physical location other than the Vibrant clinic location. "Clinical Contributions" measured the extent to which a physician had committee or strategic initiative responsibilities. Race, sex, national origin, and age were

4

not criteria for assignment. The criteria were reviewed by CMH's Interim Chair for the Department of Pediatrics, CMH's Physician-in-chief, CMH's then-Senior Director of Employee Relations, and CMH's Legal Department.

The criteria were applied to all thirty-seven GAP physicians, including Appellants. The five physicians with the highest scores identified after utilizing the criteria were required to take an assignment at the Vibrant clinic location. Appellants were among the five selected using the criteria.

Appellants initially refused their temporary assignment to the Vibrant clinic location. Two weeks after selection, Appellants emailed CMH's Interim Chair for the Department of Pediatrics, expressing their concerns that they had been discriminated against in the selection process for the Vibrant clinic location. In January of 2021, in response to Appellants' concerns, CMH's Senior Director of Employee Relations met with Appellants, Doctor G.P., Interim Chair for the Department of Pediatrics, and administrative staff members. The criteria employed to determine temporary assignments were provided and explained to Appellants. The Senior Director of Employee Relations also reviewed the criteria for assignment to the Vibrant clinic location as part of her investigation and concluded that no violation of CMH's antidiscrimination policy occurred. Additionally, CMH's Physician-in-Chief and CMH's Chief Human Resources Officer reviewed the selection process and concluded no violation of CMH's antidiscrimination policy occurred. On April 1, 2021, Appellants began working at the Vibrant clinic location.

While assigned to the Vibrant clinic location, Appellants remained CMH employees and continued working as primary care pediatricians with the same employee benefits. As part of their temporary reassignment, Appellants were eligible to receive up to $15,000 in salary stipends.[4] Appellants understood and agreed that their time at the Vibrant clinic location would be temporary, with an anticipated end date of October 1, 2021. Appellants' employment agreements did not limit CMH from assigning them to different clinical locations.

Appellants alleged that they endured negative working conditions at the Vibrant clinic location consisting of a single day with a clogged sewage line, the location's use of a new medical records system, temporary issues with the location's phone system, and a perceived lack of support staff.

Appellants submitted their resignations on May 7, 2021, to be effective August 6, 2021. At the time Russell submitted her resignation, she had worked no more than twelve shifts at the Vibrant clinic location. Prior to Russell's resignation, she received an offer of employment to work as a pediatric physician elsewhere. When El-Halawany submitted her resignation, she had worked no more than sixteen shifts at the Vibrant clinic location. Before her resignation from CMH, El-Halawany received an offer of employment from a different clinic, which she later accepted.

---

[4] In Doctor G.P.'s final call for volunteers he stated volunteers would receive $20,000 salary supplement per 1.0 full-time equivalent (FTE). Based on Appellants' FTE with CMH, which was .75 FTE, this is the pro-rated amount of money they would have been eligible to receive if they worked at Vibrant for one year.

6

Appellants filed a petition with the trial court asserting CMH discriminated and harassed them in violation of the MHRA, based on their race and/or national origin and sex/gender discrimination. Specifically, Appellants asserted "they were forced to relocate to the Vibrant Clinic or be fired from their jobs when their Caucasian co-workers were allowed to choose to stay at CMH Broadway Clinic. Their working conditions at Vibrant after relocation were far inferior to their working conditions at CMH Broadway Clinic." Additionally, Russell alleged CMH discriminated and harassed her due to her age. Subsequently, Appellants filed a motion for leave to file an amended pleading seeking punitive damages. The trial court denied Appellants' motion for leave to amend, finding that they failed to establish a reasonable basis for recovery of punitive damages in the case.

CMH filed a motion for summary judgment as to all of Appellants' claims, asserting they failed to make a prima facie case of unlawful employment discrimination as they could not show they suffered any adverse employment action by CMH. On March 12, 2024, the trial court granted CMH's motion for summary judgment. While Appellants were involuntarily assigned to a different clinic, the trial court found this reassignment was temporary. The trial court noted Appellants were not subjected to an adverse impact on their compensation or benefits. Additionally, neither Appellant was given a different job title. The trial court concluded that Appellants could not prove they were subjected to an adverse employment action or condition, and thus the trial court granted summary judgment in favor of CMH on all counts. This appeal follows.

7

**Discussion**

To begin, CMH urges this Court to dismiss Appellants' appeal due to numerous rule violations. We note that Appellants' original brief filed with this court was stricken for violations of Rule 84.04. Appellants were granted leave to file an amended brief to correct the violations. Appellants subsequently filed the amended brief, which is the subject of this opinion. The most egregious deficiency in Appellants' amended brief is the failure to comply with Rule 84.04(c).

Rule 84.04(c) provides: "The statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination **without argument.**" (emphasis added). "The primary purpose of the statement of facts is to afford an immediate, accurate, complete and unbiased understanding of the facts of the case." *Lattimer v. Clark*, 412 S.W.3d 420, 422 (Mo. App. W.D. 2013) (citation omitted).

Appellants argue in response that their statement of facts is not argumentative as it is "replete with factual references supported by voluminous documentation throughout the Appellant Record on Appeal." Moreover, Appellants criticize CMH's characterization of their factual statement as argumentative and conclusory, because they find their recitation of events to be "factual narratives" which is completely appropriate. We fail to comprehend how Appellants can so confidently assert that their statement of facts is without argument and is compliant with Rule 84.04(c).

Simply put, every single page of Appellants' statement of facts violates Rule 84.04(c). Here are just a few of the many examples of Appellants' argumentative nature in their statement of facts: "[Doctor] determined that the Matrix still wasn't

8

discriminatory enough"; "Therefore, to be clear, every single white male in leadership that oversaw the discrimination against [Appellants] has been fired or constructively discharged . . . in the wake of [Appellants'] allegations of discrimination.  Where there is smoke there is fire"; "This sham investigation was to be expected"; "Hollow promises from an institution that had repeatedly chose [sic] to discriminate against [Appellants]"; and "It is almost indisputable that at least one of these fifteen cases must have had some substantiation."  Appellants have completely failed to supply this Court with a fair and concise statement of facts that complies with the Rule.

Appellants also fail to cite to specific pages of the record for each statement of fact asserted.  *See* Rule 84.04(c) ("All statements of facts shall have **specific page references** to the relevant portion of the record on appeal[.]")(emphasis added).  Several portions of Appellants' statement of facts are devoid of any citations to the record.  Moreover, the sentences that do have citations often cite globally to Appellants' paragraph 34 response to CMH's statement of uncontroverted material facts.  This citation, however, is to a seven-page response with numerous internal citations incorporated throughout.  Appellants failed to cite to specific pages to assist this Court in finding the information they attempt to rely on.  *See Lexow v. Boeing Co.*, 643 S.W.3d 501, 508 (Mo. banc 2022) ("For every individual statement of fact, a specific page reference is required.").  This Court, "should not scour the record to determine what the appellant is asserting." *Woodson v. City of Indep.*, 124 S.W.3d 20, 26 (Mo. App. W.D. 2004).  This is another clear violation of Rule 84.04(c).  Additionally, we note that Appellants inappropriately cite to an exhibit, a newspaper article that was not published until after summary

9

judgment had already been granted, and therefore was obviously not part of the summary judgment record below. *See Green*, 606 S.W.3d at 117.

Nevertheless, "[t]his Court always prefers where possible to decide matters on the merits." *Deere v. Deere*, 627 S.W.3d 604, 609 (Mo. App. W.D. 2021). Although Appellants' brief is noncompliant, we exercise our discretion to review this case on the merits to the extent possible. *In the Interest of A.S.*, 700 S.W.3d 629, 632 (Mo. App. S.D. 2024).

**Standard of Review**

We review a trial court's grant of summary judgment *de novo*. *Weeks v. St. Louis Cnty.*, 696 S.W.3d 333, 338 (Mo. banc 2024). When reviewing the trial court's decision to grant summary judgment, we apply the same criteria the trial court used in determining whether summary judgment was proper. *Id.* "Summary judgment is proper if the moving party establishes there is no genuine issue as to the material facts and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation omitted).

**Point I**

Appellants' first point on appeal is that the trial court erred in granting summary judgment in favor of CMH because CMH failed to serve an electronic copy of its statement of uncontroverted material facts to Appellants in a manner consistent with Rule 74.04's requirements.

Pursuant to Rule 74.04(c)(1):

> An electronic copy of the statement of uncontroverted material facts in a commonly used medium . . . in a format that can be read by most commonly used word processing programs . . . shall be served on the party

to whom the motion for summary judgment is directed. In addition to the information normally in a certificate of service, the certificate of service shall also state the format of the electronic copy and the medium used to transmit the electronic copy to the responding party.

Appellants cite cases that state compliance with Rule 74.04(c) is mandatory, and a movant's failure to do so requires reversal of a grant of summary judgment. *See Murphy v. Middleton,* 256 S.W.3d 159, 162 (Mo. App. S.D. 2008). What Appellants ultimately fail to consider is that these cases involve situations where a movant has failed to comply with the substantive terms of Rule 74.04(c) which require a statement of uncontroverted material facts be attached to a motion for summary judgment, which "shall state with particularity in separately numbered paragraphs each material fact as to which movant claims there is no genuine issue, with specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts." *See Hanna v. Darr*, 154 S.W.3d 2, 5 (Mo. App. E.D. 2004) (summary judgment in favor of movant was improper where movant failed to comply with Rule 74.04 since the motion did not set forth each material fact in separately numbered paragraphs and did not specifically reference supporting documentation). Appellants provide no caselaw or citation to authority to support their assertion that CMH's alleged failure to comply with Rule 74.04(c)(1)'s electronic copy requirements would require this Court to reverse the trial court's grant of summary judgment.

Moreover, it is evident CMH **did** comply with Rule 74.04(c)(1). Appellants' only assertion of error in this regard is that CMH failed to provide to Appellants an electronic copy of the statement of uncontroverted material facts in a commonly used medium and

11

in a format that can be read by most commonly used word processing programs. Appellants do not even attempt to persuade this Court or sufficiently explain how a filing with the Missouri state court's electronic filing system fails to satisfy Rule 74.04(c)(1)'s electronic copy provision. CMH's filing with the court's electronic filing system is a "commonly used medium" to serve a copy of a filing on opposing counsel. Through the court's electronic filing system, Appellants were served with a PDF copy of CMH's statement of uncontroverted material facts. A PDF file can be read by "most commonly used word processing programs[,]" and Appellants fail to establish otherwise.[5]

Appellants also assert CMH failed to include in its certificate of service any reference to the format of the electronic copy and the medium used to transmit it. CMH's statement of uncontroverted material facts contained the following certificate of service: "This is to certify that on the 13th day of November 2023 the above and foregoing was **filed via the Court's electronic (ECF) filing/notification system which will cause a copy to be served on all parties of record.**" (emphasis added). This is sufficient under Rule 74.04(c)(1).

Point I is denied.

**Point II**

Appellants' second point on appeal is that the trial court erred in granting summary judgment in favor of CMH because the trial court improperly concluded that they did not

---

[5] We find it somewhat disingenuous for Appellants to insist that their argumentative statement of facts complies with the Rule but insist that CMH's alleged hyper-technical violation of the Rule's electronic copy provisions requires reversal.

12

articulate a prima facie case of unlawful employment discrimination resulting in an adverse employment action against Appellants.[6]

"[S]ummary judgment should seldom be used in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence." *Kerr v. Curators of the Univ. of Mo.*, 512 S.W.3d 798, 805 (Mo. App. W.D. 2016) (citation omitted). When considering summary judgment on an MHRA claim, this Court, however, "must determine whether the record shows two plausible, but contradictory, accounts of the essential facts and the 'genuine issue' in the case is real, not merely argumentative, imaginary, or frivolous." *Id*. (emphasis added) (citation omitted). Summary judgment should be granted only when the evidence could not support any reasonable inference for the non-movant. *Id.*

To begin, Appellants claim the trial court refused to scrutinize the record before it in the light most favorable to Appellants, and it failed to accord them the benefit of every doubt associated with the factual determinations that the trial court made in favor of CMH. As noted, Appellants failed to comply with Rule 74.04(c)(2), as many of their responses below were merely argumentative, and failed to support each of their denials with "specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing there is a genuine issue for trial." Appellants' "dreadful failure to comply

---

[6] Despite Appellants arguing in their point relied on and brief that CMH retaliated against them, this argument was never brought before the trial court as Appellants' petition did not include any counts asserting CMH retaliated against them in violation of MHRA. Furthermore, we do not address any arguments Appellants make regarding constructive discharge and hostile and abusive work environment as these are beyond the scope of their point relied on. *See* Rule 84.04(e).

13

with Supreme Court Rule 74.04(c)", as described by the trial court, resulted in admissions of CMH's statement of uncontroverted material facts. Since nearly every fact was ultimately admitted, Appellants are to blame for their displeasure in how the trial court reached its conclusion after properly reviewing the summary judgment record before it.

We now turn to whether the trial court erred in granting summary judgment due to Appellants' failure to articulate a prima facie case of unlawful employment discrimination. Appellants allege CMH discriminated against them based on their sex, race, and national origin via disparate treatment.[7] "Like federal courts, Missouri courts use the burden-shifting analysis developed in *McDonnell Douglas Corp. v. Green*, [411 U.S. 792 (1973),] to evaluate proof in discrimination cases where disparate treatment is alleged." *Shiffman v. Kan. City Royals Baseball Club*, LLC, 687 S.W.3d 443, 464 (Mo. App. W.D. 2024) (internal quotation omitted). Since Appellants claim disparate treatment, which involves indirect evidence of discrimination, we apply the *McDonnell Douglas* burden-shifting framework. *Id.*

Under the *McDonnell Douglas* framework, a plaintiff establishes a prima facie case of employment discrimination by showing that: 1) she is a member of a protected class; 2) she was qualified to perform the job; 3) she suffered an adverse employment action; and 4) similarly situated employees, not part of the protected class, were treated

---

[7]At the trial court level, Russell also raised a claim of discrimination based on age. On appeal, Appellants only develop arguments about discrimination based on sex, race, and national origin. Aside from a brief mention of Russell's age discrimination claim, this claim is not developed on appeal and is thus abandoned. *See Unifund CCR Partners v. Myers*, 563 S.W.3d 740, 742-43 (Mo. App. E.D. 2018).

14

more favorably. *See Lampley v. Mo. Comm'n on Hum. Rts.*, 570 S.W.3d 16, 24 (Mo. banc 2019).

Based on the summary judgment record before us, we find Appellants failed to establish a prima facie case of employment discrimination. The summary judgment record establishes both Appellants are minority women and that they are qualified physicians; however, the record does not reflect Appellants suffered an adverse employment action.

An employment action or condition is "adverse" when it has an adverse impact on the plaintiff. *See Kader v. Bd. of Regents of Harris-Stowe State Univ.*, 565 S.W.3d 182, 189 (Mo. banc 2019). Appellants assert their placement at Vibrant clinic caused them emotional distress. However, it is well established that "[a]n action is not adverse simply because it is upsetting or disappointing to an employee." *Id.* at 190. Appellants cite to a line of federal cases interpreting Title VII, which has language nearly identical to that of the MHRA, wherein the courts have found that an employer's reassignment of an employee does not constitute an adverse employment action absent "a significant change in working conditions or a diminution in the transferred employee's title, salary, or benefits." *Clayton v. DeJoy*, No. 4:18-cv-01039-JAR, 2020 WL 6822641, at *6 (E.D. Mo. Nov. 20, 2020) (citation omitted); *see also Lambert v. New Horizons Cmty. Support Servs., Inc.*, No. 2:15-cv-04291-NKL, 2016 WL 1562963, at *2 (W.D. Mo. Apr. 18, 2016) ("Changes in duties or working conditions that cause no materially significant disadvantage . . . are insufficient to establish the adverse conduct required to make a prima facie case.") (citation omitted). These cases, however, have been abrogated by the

15

recent United States Supreme Court ruling in *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346 (2024), which was not cited by either party. In *Muldrow*, the Supreme Court found that prior cases' requirement that the harm incurred be "significant" ("[o]r serious, or substantial, or any similar adjective suggesting the disadvantage to the employee must exceed a heightened bar") was at odds with the plain language of the statute, which merely prohibits discrimination "with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Id.* at 354-355 (citing 42 U.S.C. §2000e-2(a)(1). The text of the MHRA similarly does not expressly include that the adverse employment action be significant. Section 213.055.1(1)(a). Even applying the standard set forth by the Supreme Court and the plain language of the MHRA, Appellants fail to establish that they suffered an adverse employment action based upon their being members of a protected class.

In this case, Appellants not only remained primary care pediatricians in the employ of CMH while assigned to the Vibrant clinic location, they were in fact eligible to receive up to $15,000 in additional salary stipends for their temporary assignment to Vibrant. This alone fails to constitute an adverse employment action. Additionally, while Appellants assert the working conditions at Vibrant were "intolerable", the only conditions of which they complain comprised of a one-day clogged sewage line, temporary issues with a phone system, a different medical records system, and a relative lack of support staff. Appellants fail to establish that these temporary problems at Vibrant constituted an adverse employment action. While transfer to a substandard working location could in some circumstances constitute an adverse employment action

16

if the transfer was based on a party's protected class, the allegations of minor and temporary issues at Vibrant in this matter do not constitute a level that would give rise to a cause of action. We note that in *Muldrow*, Justice Kagan, writing for the Court, stated "a court may consider whether a less harmful act is, in a given context, less suggestive of intentional discrimination." *Id.* at 358. Because the selection of Appellants for temporary reassignment was made *before* the single-day sewage issue, and presumably unrelated to temporary issues with a phone system, these irritations do not suggest intentional discrimination by CMH. Nor do a different records system, which theoretically employees might prefer, or a relative lack of support staff. These temporary and relatively minor issues are insufficient to establish intentional discrimination.

Based on the summary judgment record, Appellants have failed to establish they suffered an adverse employment action and thus failed to establish a prima facie case of employment discrimination. Accordingly, the trial court did not err in granting summary judgment as to all counts in favor of CMH. Point II is denied.

**Point III**

In Appellants' third point on appeal, they assert the trial court erred in granting CMH's motions *in limine* because the trial court failed to adequately consider the potential relevance of the testimony and documentation that Appellants should have been allowed to present at trial. Even if there had been a trial on the underlying claims, a ruling on a motion *in limine* preserves nothing for appeal. *See Stewart v. Partamian*, 465 S.W.3d 51, 55 (Mo. banc 2015) ("A motion in limine, by itself, preserves nothing for appellate review.") (citation omitted). We do not address this point as no motions *in*

*limine* are presently before this Court since this appeal is from the trial court's grant of summary judgment. Point III is denied.

**Point IV**

In Appellants' fourth and final point on appeal, they assert the trial court erred in denying Appellants' motion to amend pleading to include a claim for punitive damages. Because we find the trial court did not err in granting summary judgment on the underlying claim, we decline to address this point. Point IV is denied.

## Conclusion[8]

For the above-stated reasons, we affirm the judgment of the trial court.

_____
Gary D. Witt, Judge

All concur

---

[8] Appellants filed a motion for attorneys' fees on appeal which was taken with this case. Pursuant to section 213.111.2 we deny Appellants' motion as they are not the prevailing party.

18